## EARL TYLER v. THE STATE.

### No. 3745.   Decided November 17, 1915.

Rehearing denied December 15, 1915.

#### 1. -Theft—Accomplice—Corroboration—Sufficiency of the Evidence.

Where, upon trial of theft, it was shown by circumstantial evidence that the alleged stolen property had been stolen from a certain place, and the defendant confessed the theft to the accomplice, and such confession was corroborated by circumstantial evidence, the conviction was sustained, and it was not necessary to charge on circumstantial evidence. Following Wampler v. State, 28 Texas Crim. App., 352, and other cases. Davidson, Judge, dissenting.

#### 2.—Same—Sufficiency of the Evidence—Accomplice—Corroboration.

Where, upon trial of theft, the accomplice was corroborated not only by circumstantial evidence which tended to connect the defendant with the commission of the offense, but by the testimony of a State's witness who was not an accomplice, the conviction was sustained. Davidson, Judge, dissenting.

#### 3.—Same—Evidence—Ratification—Conversation.

Where, upon trial of theft, defendant contended that what was said and done by certain State's witnesses after defendant had called them over the telephone was not admissible in evidence, but it was shown that the defendant subsequently went to one of these witnesses and asked him what he and other witnesses had done with the alleged stolen property and told him he owned a half interest therein, the court did not err in admitting such testimony. Davidson, Judge, dissenting.

#### 4.—Same—Value of Stolen Property.

Where, upon trial of theft of certain automobile tires, the State's witness testified that the value of such tires was uniform over the entire State, and that he knew their value, stating it. there was no reversible error.

#### 5.—Same—Evidence—Way-Bill.

Upon trial for theft of certain automobile tires, there was no error in admitting in evidence the original way-bill showing the contents of the railway car in which said tires were shipped. and which way-bill was made out at the original point of shipment and handed to the station agent in the regular course of shipment.

#### 6.—Same—Evidence—Possession—Ownership.

Where, upon trial of theft of certain automobile tires, no question was raised by the evidence that the party alleged to be the owner was not the agent of the railway company at the station where they were stolen, the contention that the ownership of said tires was not properly alleged in said agent is untenable.

#### 7.—Same—Evidence—Possession.

Where, upon trial of theft of certain automobile tires, the indictment alleged the ownership and possession of them in the agent of the railway company, it was not necessary for him to go out and take physical possession of said tires. as his possession and ownership by virtue of his agency attached when the car containing the tires was placed in the yards at his station. and so continued until the car left the yards.

8.—Same—Charge of Court—Actual Possession.

Where, upon trial of theft of certain automobile tires, the confession of defendant to the accomplice, and all the facts and circumstances showed that said tires were taken out of the car while in the yards of the railway station, there was no error in the court's failure to charge the jury that they must believe from the evidence that said tires were in the actual possession of the railway agent in whom ownership and possession was alleged.

Appeal from the District Court of McLennan. Tried below before the Hon. Richard I. Munroe.

Appeal from a conviction of theft; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Tom M. Hamilton, R. Q. Murphree,* and *J. E. Synnott,* for appellant. —On question of court's failure to charge on circumstantial evidence: Eckert v. State, 9 Texas Crim. App., 105; Conner v. State, 17 id., 1; Willard v. State, 26 id., 126; Harris v. State, 15 id., 629; Trijo v. State, 45 Texas Crim. Rep., 127.

*C. C. McDonald,* Assistant Attorney General, for the State.

HARPER, JUDGE.—Appellant was convicted of theft and his punishment assessed at two years confinement in the State penitentiary.

One of the main contentions of appellant is that the testimony of the accomplice is not corroborated in a manner tending to connect him with the commission of the offense. That a theft of eight automobile wheels and tires was shown by other testimony is not contested. J. L. Koerber testifies that the property was stolen out of C. R. I. & P. car No. 261,655. It may be admitted that they were stolen out of the car while the car was in the yards at Mart, Texas, was shown only by circumstantial evidence, outside of the confession of appellant to the accomplice, Charlie Foster. But an accomplice may be corroborated by circumstantial evidence as well as by direct testimony. And when a confession is proven, although the corroboration is shown by circumstantial evidence, no charge on circumstantial testimony is required. (Wampler v. State, 28 Texas Crim. App., 352; Heard v. State, 24 Texas Crim. App., 103; Branch's Crim. Law, sec. 203, and cases cited.)

The accomplice, Foster, testifies that on the night of the 23d of June appellant, Tyler, called him over the telephone and asked him to come to Wilburn's restaurant. Tyler at that time was driving a service automobile in Mart. That he went to the restaurant and saw appellant, and appellant said, "I have been called out and I have not got time to talk to you. Mr. Patrick will tell you what I want." Patrick came and got in the car and told witness they had some automobile wheels and tires at a point Patrick told him to drive to. That he went there and he and Patrick loaded on eight automobile tires and wheels and hauled them to the cotton yard, and deposited them at that place. That they found the tires and wheels at the dividing point of the railroad

right-of-way and the Texas Land Improvement Company lots. When Tyler came back from his run (he being a brakeman on the I. & G. N. road) he approached witness and asked him, "What did you and Patrick do with those tires?" and wanted to sell them to witness—said that half of them belonged to him, Tyler. Witness says he bought Tyler's half interest in the tires and paid him $30 for his interest, and afterwards bought out the interest of Patrick in the tires. Some time afterwards the railroad discovered the location of the tires and wheels, and Foster gave up four of the tires to the railroad company, and paid them for four he had sold. He testifies when he ascertained the railroad company had located the tires he went to appellant and Patrick and told them about the discovery, and he would have to make good the four he had sold, and appellant and Patrick agreed to furnish the money. That they telephoned to Erby Driver at Waco, and told him they wanted to see him, and would be over. That all three of them went to Waco and saw Driver; that Tyler and Patrick told him they were in trouble and wanted to borrow $75 from him, with which Foster was to make good the four tires he had sold. That Driver did not have the money and borrowed it from Morris Hillman, witness and Driver making the note to Hillman. He says appellant and Patrick told Driver at the time he, Foster, was not to pay any part of the money borrowed, but they (appellant and Patrick) would pay Driver, and they did give their notes to Driver for the money borrowed. That he took the $75 and paid for the tires he had sold; that when he told Tyler about the railroad company being after the tires he had procured from him and Patrick, that Tyler, appellant, admitted to him they had stolen the tires and wheels from the railroad company out of the car. His testimony made a plain case of theft against appellant, and the only question is, is it sufficiently corroborated to connect Tyler with the commission of the offense?

Erby Driver is not an accomplice nor accessory, and as we view the record there is no evidence tending to show that he is, nor is it contended that he is an accomplice in motion for new trial and brief of appellant filed herein, and we think his testimony alone is sufficient corroboration. All he did was to loan Tyler and Patrick the money to pay for the four tires that had been sold. It is not shown that he knew at this time what kind of trouble they were in. If one loans another money to pay the owner for the stolen property, this would not make him an accessory. He says appellant, Tyler, called him over the phone and told him he was in trouble, and wanted to see him. That appellant, Patrick and Foster did come to see him about 2 o'clock in the morning, and asked him to loan them some money. That appellant, Tyler, said to him, " 'Erby, I am in trouble; I want some money.' I said, 'I haven't got the money, but I think I can get you the money.' We went to Mart the next day and got the money. We got the money from Lawrence Hillman of Mart Loan Company. I put up a one-carat diamond ring to secure the money. Charley Foster signed the note that was given to Hillman. There was a note made for $95. I borrowed

$85. I used $10 of the $85 and turned over to Foster $75 by Tyler and Patrick's request, but there was a note made for $95 to come due the 17th day of October. The note was made to me and signed by Charlie Foster, and it was verbally agreed between the four of us, myself, Tyler, Patrick and Foster, that. Foster was not to pay the note and that they would pay it. The note was made in my favor; Charlie Foster filled up two notes, First National Bank notes of Mart, and filled them out himself and suggested that I get Tyler and Patrick to sign them, and he took them and got them signed, Charlie did. I left them at the old corner drug store. They were payable to me. The amount was $41.50 each. They were signed by Earl Tyler and Arthur Patrick; they both signed each note. I left the notes in the safe at the corner drug store in the care of Mr. Castlebury, manager of the corner drug store. They remained at the corner drug store until the grand jury met some time that fall, I forget just when it was, along in September, I believe. When I did remove them from the old corner drug store I give them to Tyler and Patrick at their request; they told me the grand jury was in session at Waco investigating the burglaries at Mart and that they didn't want the grand jury to get hold of the notes (meaning Earl Tyler and Arthur Patrick). They says, 'We will pay you,' says, 'You don't have to keep the notes.' "

We think this directly corroborates the accomplice in a way tending to connect appellant with the offense. In addition to this it is shown by other witnesses that the three men did go and see Erby Driver that night,—Driver being also a brakeman on the I. & G. N. road.

Appellant contends that what was said and done by the witnesses Foster and Patrick, after appellant called witness over the phone and told him, "He had to go—that Patrick will tell you what we want," is not admissible against him. As the evidence shows that Tyler subsequently went to witness and asked him, "What did you and Patrick do with those tires?" and told him he owned half of them, and sold the witness a half interest in them, the court did not err in admitting the testimony.

Witness H. D. Schleeter was permitted to testify that the value of the eight tires was $269.53. Appellant objected to this testimony as the witness had not qualified to prove the value of tires in Mart, Texas, at the time they are said to have been stolen. The court, in approving the bill, qualifies it and as qualified the bill presents no error. That witness testified the value of the tires was uniform over the entire State, and he knew their value.

The original way-bill showing the contents of the car was admitted in evidence over appellant's objection. The evidence showed this way-bill was made out in St. Louis, the original point of shipment, and appellant contends that the person who made it out was the only person who could testify to its correctness. Mr. Johnson, station agent at Mart (that place being a division point) testified it was the way-bill delivered him from the C., R. I. & P. car, and was the bill used in forwarding the car, and is the authority that it is shipped by. It

is a matter of common knowledge that these way-bills are made out at the original point of shipment, delivered to the conductor of the train which hauls the car, and at. the end of his division delivered to the station agent, and when another train is made up to continue the transportation, delivered to that conductor, and so on to the point of destination. Mr. Johnson was properly permitted to testify that this car arrived in Mart and was placed in the yards on the 23rd of June, and forwarded to Houston on the 24th of June, and the way-bill shown was the one used in transportation of the car.

As there is no question raised by the evidence in this record that Mr. Johnson was not the agent of the road at Mart; that this C. R. I. & P. car No. 261,655 was placed in the railroad yards at Mart on June 23rd, and left the yards on the night of June 24th, the ownership of the tires was properly alleged to be in Mr. Johnson while in Mart. He was in charge of the railroad company's freight at that point. There is no evidence tending to show otherwise either directly or indirectly. Nor did ,he have to go out and take physical possession of the property to become special owner. His possession and ownership, by virtue of his agency, attached when the car, containing the tires, was placed in the yards at Mart, Texas, and continued until the car left the yards at Mexia. The confession of appellant to Foster and all the facts and circumstances would show that the tires were taken out of the car while in the yards at Mart, therefore there was no evidence calling for a charge that "you must believe that said property was in the *actual possession* of the said E. E. Johnson, and in case you have a reasonable doubt of that fact to acquit." The evidence suggests the possession of no other or different person, therefore the court did not err in refusing this charge.

The judgment is affirmed.

*Affirmed.*

[Rehearing denied December 15, 1915.—Reporter.]

DAVIDSON, JUDGE (dissenting).—I wrote an opinion reversing the judgment, but my brethren would not agree with me and filed their opinion written by Judge Harper affirming.

I do not care to enter into any lengthy statement of the facts or reasoning why I can not concur. The State relied upon the testimony of the accomplice, Foster, for a conviction. Eliminating his testimony, there is no evidence which shows that appellant was ever in possession of the alleged stolen property. Even the accomplice does not undertake to place defendant in possession of the property. The only evidence from such accomplice is that appellant asked him on one occasion what he and Patrick did with the tires, the alleged stolen property, stating that he had a half interest in them. There was a conversation between the accomplice, Foster, and appellant to the effect that appellant told Foster to see Patrick, whom the State claims assisted in stealing the tires, who would talk to him. If all this be treated as incriminating, it does .not connect appellant with the taking, nor does

any statement, as I understand the testimony, from any source, the accomplice or otherwise, so connect appellant. The State does not undertake to show that appellant was ever in possession of the property. He was in no way connected with the original taking otherwise than the above statements of this accomplice, and no statement testified by Foster placed appellant in possession of the tires at any time or place. He *excludes* by his testimony the fact he ever saw appellant in possession of the property. Appellant could be half interested in the tires in many ways without being a principal. It was not necessary that he be connected with the taking as a principal to be interested in the proceeds of the sale or disposition of the tires. Foster testified that he was in possession of the tires and sold some of them. He was seeking to avoid responsibility. The accomplice is not corroborated, nor sought to be corroborated as to the alleged statements of appellant. Nor did appellant make a statement that he took or assisted in taking the tires even under the evidence of the accomplice. It has been held that where a crime is shown the accused may be connected with it by his confession, but in order to constitute this confession evidence of guilt of theft in this case it must show that he participated in the taking, because the indictment only charged him as a principal. It has also been held that a confession must connect, as in this case, the party making the confession with the taking, for he can not be the thief unless he was so connected. If appellant made the statement to this accomplice of having half interest, this does not show he took the property, and the accomplice is not corroborated even as to that statement. From any viewpoint, there is no fact corroborative of the accomplice that appellant made such statement. Extra-judicial verbal confessions are not sufficient to convict even when the taking is shown when that confession comes alone from the accomplice. Corroboration is necessary, and none was offered or introduced by the State. The testimony of Driver does not corroborate the accomplice as to the taking, even if it is corroborative of any fact criminating appellant in the matter. The court, in a general way, charged the jury that if appellant took the property he would be guilty as a thief. *Without this being shown he could not be convicted under this indictment.* This was specifically called to the attention of the court in requested charge, which was refused. As before stated, however, the court in a general way informed the jury if defendant took the property, etc., he would be guilty, but the special charge called the attention of the jury to the law that it must be shown by evidence that he was connected with the original taking specifically, and was not only not given but a special charge was refused. In my judgment, this charge under the facts should have been given. This error is emphasized by reason of the fact that the court charged in regard to principals. If such charge be justified, then it was incumbent on the court to give the converse of the proposition, towit: the law applicable to the facts, if appellant was not connected as a principal and especially so under the facts of this case. This was the vital question of the case. If he was a principal

and the facts showed it to the satisfaction of the jury, he should be convicted, but where the facts are as shown by this record, and there is no evidence showing that he was connected with the taking of the property, the court should have charged the jury that unless he was a principal they could not convict. The State must show this beyond a reasonable doubt by evidence. This matter was properly presented by counsel for defendant, and exceptions timely reserved to the charge and refusal to give the special requested instructions. For these reasons, without further elaboration, I can not agree to the affirmance. The judgment ought also to be reversed and the cause remanded for want of sufficient evidence to support the verdict.