**William Ray WALKER, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 58687.

Court of Criminal Appeals of Texas, Panel No. 1.

May 13, 1981.

Paul Banner and Cornel Walker, Greenville, for appellant.

Jerry Spencer Davis, Dist. Atty., Greenville, Robert Huttash, State's Atty., Austin, for the State.

Before ONION, P. J., and ODOM and W. C. DAVIS, JJ.

## OPINION

ONION, Presiding Judge.

This appeal is from a conviction for capital murder, where the court assessed punishment at life imprisonment after the jury answered "no" to the second special issue at the penalty stage of the trial under Article 37.071, V.A.C.C.P. See particularly said Article 37.071(b)(2).

On appeal appellant challenges in two grounds of error that the evidence is insufficient to support the conviction because the same was based upon the uncorroborated testimony of an accomplice witness. See Article 38.14, V.A.C.C.P.

Omitting the formal parts, the indictment charged that the appellant on or about July 8, 1975 "did then and there intentionally and knowingly cause the death of an individual Thomas Ellis White, whose death was caused by a gun shot; and that the said Thomas Ellis White was a peace officer acting in the lawful discharge of an official duty; and that the said William Ray Walker then and there knew the said Thomas Ellis White, was a peace officer ...."

This is a voluminous record concerning the killing of T. E. White, a "nightwatchman" for Wolfe City, sometime between 3:00 and 3:30 a. m. on July 8, 1975. The cause of death was a bullet wound in the head. White's body was found in the front seat of his patrol vehicle parked in front of the Wolfe City National Bank. Much detailed evidence was offered as to those who had conversed with the deceased prior to death and those who viewed his body after his death, both in the patrol car and later. None of such evidence connected or tended to connect the appellant with the crime.

Alton Burns, 22 years old, the State's chief witness, was an accomplice witness as a matter of law as charged by the court in its jury instructions at the guilt stage of the trial. Burns had already entered a plea of guilty to the murder of White, and the punishment had been recommended at 17 years' imprisonment by the prosecution. A pre-sentence investigation had been requested. He stated he understood the court could assess punishment as high as life or 99 years' imprisonment. He acknowledged that he was also currently on probation for burglary out of Hopkins County, that he had been charged with a number of arson charges in Rockwall County, and earlier had been to "State Reform School." He admitted on direct and cross-examination to a number of encounters with law enforcement officers. Burns further admitted he had been released from the Terrell State Hospital after a 45 day commitment about five days before the killing of White.

Burns stated that on the night of July 7, 1975, the appellant Walker had come by his mother's house, and that he followed the appellant's car in a borrowed car into Wolfe City. Appellant parked his car at the inter-

section of Main and Preston Streets and got in Burns' car. They drove to Commerce and bought beer and drove around and then returned to Wolfe City where they watched television at the home of Burns' sister until she told them to leave. They then drove to a Mobil service station in Wolfe City and talked to some men there. This was about 12:30 a. m. or 1:00 a. m. on July 8, 1975. One of them, Jim Dawson, rode around with them for awhile and then they took him home.

About this time they decided to go looking for guns in pickup trucks to steal as they had done the week before in several surrounding towns. They drove to Celeste and didn't see any pickups, but on the way out of town they spotted a parked pickup truck. Burns related the appellant went to the pickup and returned to his car with a .22 caliber rifle, some .22 caliber shells and some eight track tapes. They started back to Wolfe City and stopped along the way to relieve themselves. They had been drinking beer most of the night. While they were on the roadside, the appellant used the .22 caliber rifle to shoot out a street light. Burns revealed that as appellant Walker was getting back into the car he stated he could shoot "T. E." from about half that distance with "no sweat." Burns knew he had reference to T. E. White, the night watchman in Wolfe City. As they drove towards Wolfe City, Burns recalled they made "plans and whatever." He drove Walker to his car. Burns then proceeded to his mother's house, went to his room as if he was going to bed, and then slipped out the back door. He drove to the house where Walker lived with his mother. They then drove to a spot near the Baptist Church where Walker got out of the car with the rifle. Burns drove through the town and stopped and talked with the deceased, T. E. White, whose car was parked in front of the bank. After five minutes, Burns drove on to his brother's house and got two beers. He drove back down Main Street and saw White lying down in his car with his leg sticking out of his car. He denied he heard a shot or saw the offense committed. Burns drove to an area near

the Baptist Church, and the appellant came out from between some trees with a .22 caliber rifle and a pistol. Appellant told Burns, "Well, I did it," and said he was going to keep "T. E.'s pistol." Burns told him they had to get rid of the rifle. They drove to City Lake and Burns threw the rifle into the lake. He drove Walker near his home and Walker walked from there. Burns was arrested on July 11, 1975. That day he led Texas Ranger Lloyd Johnson to the Wolfe City Lake where two .22 caliber rifles were recovered, one being the rifle taken in the burglary of a vehicle near Celeste. Burns related his story to the authorities and the appellant was arrested.

Jimmy Don Mulkey testified he lived at Cockrell and the Farm to Market Road to Wolfe City near Celeste. He testified that he was on vacation in July, 1975 from a Sunday to a Wednesday, and when he returned home on July 9, 1975, he noticed his pickup truck door was ajar. He found his Remington single shot .22 caliber rifle, model 510, missing, as well as some .22 caliber shells. He reported the theft on July 9, 1975. A fingerprint was lifted from one of the truck windows. It was shown to be that of the appellant.

Mulkey was shown State's Exhibit No. 8, one of the rifles recovered from the lake, and identified it as his, although he stated he had no marks on it and noted that it was slightly changed in appearance.

William Ginn, a chemist and firearms examiner at the Garland Department of Public Safety laboratory, testified the bullet fragments taken from the victim's body were consistent with a .22 caliber round. He stated he had test-fired the Mulkey weapon, and although the identifying marks on the fragments of the death bullet and the test bullets appeared similar, there was an insufficient correlation to enable him to say that the Mulkey weapon had fired the fatal bullet. On cross-examination he agreed that any of eight possible models of a .22 caliber rifle could have fired the fatal bullet. There was evidence that over 558,000 rifles of the same model as the Mulkey weapon had been manufactured.

No evidence was adduced as to the quantity of manufacture of the other seven .22 caliber rifle models.

Claude Stephens, a fingerprint expert with the Department of Public Safety, testified a print lifted from Mulkey's vehicle was the same as known prints of the appellant. The other prints lifted from the pickup truck were not those of the appellant. He related, depending upon the oil in a person's skin, a fingerprint on glass, and under ideal conditions could be liftable for about two weeks.

The defense offered testimony that he was home by 2:20 a. m. on July 8, 1975, and did not leave thereafter.[1]

Article 38.14, V.A.C.C.P., provides:

"A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; *and the corroboration is not sufficient if it merely shows the commission of the offense.*" (Emphasis supplied.)

The language of this statute has remained the same since the first Texas Code of Criminal Procedure.

■ An accomplice witness is a discredited witness [*Cast v. State*, 164 Tex.Cr.R. 3, 296 S.W.2d 269 (1956)] because her or his testimony alone cannot furnish the basis for the conviction. *O'Neal v. State*, 421 S.W.2d 391 (Tex.Cr.App.1967); *Boone v. State*, 96 Tex.Cr.R. 644, 259 S.W. 581 (1924). No matter how complete a case may be made out by an accomplice witness or witnesses, a conviction is not permitted unless he or they are corroborated. *Meyer v. State*, 104 Tex. Cr.R. 6, 282 S.W. 233 (1926).

It has frequently been said that the testimony of an accomplice witness is untrustworthy and that it should be received and viewed and acted on with caution. 23 C.J.S., Crim.Law, § 808, p. 72. And in *Commonwealth v. Turner*, 367 Pa. 403, 80

A.2d 708, it was stated the testimony of an accomplice witness is to be carefully scrutinized not only because of any interest he or she might have but because his testimony is evidence from a corrupt source.

In *Edwards v. State*, 427 S.W.2d 629 (Tex.Cr.App.1968), this court wrote:

"The test as to the sufficiency of the corroboration is to eliminate from consideration the evidence of the accomplice witness and then to examine the evidence of other witnesses with the view to ascertain if there be inculpatory evidence, that is evidence of incriminating character which tends to connect the defendant with the commission of the offense. If there is such evidence, the corroboration is sufficient; otherwise it is not. *Dalrymple v. State*, Tex.Cr.App., 366 S.W.2d 576; *Bradford v. State*, 170 Tex.Cr.R. 530, 342 S.W.2d 319." (Emphasis supplied.) See also *Cherb v. State*, 472 S.W.2d 273 (Tex.Cr.App.1971); *Reynolds v. State*, 489 S.W.2d 866 (Tex.Cr.App. 1972); *Nelson v. State*, 542 S.W.2d 175 (Tex.Cr.App.1976); *Hernandez v. State*, 578 S.W.2d 731 (Tex.Cr.App.1979). See also *Rogers v. State*, 461 S.W.2d 399 (Tex. Cr.App.1970).

In *Edwards v. State*, supra, this court quoted from *Minor v. State*, 108 Tex.Cr.R. 1, 299 S.W. 422 (1927), as follows:

"The law forbidding a conviction upon the uncorroborated testimony of an accomplice does not demand that there be direct evidence pointing to the accused as the offender, but merely requires that there be 'other evidence tending to connect the defendant with offense committed.' * * * Circumstances proved by credible witnesses may be as potent as direct testimony in tending to connect the accused with the commission of the offense. The state is not called upon to point to some single or isolated fact

---

1. The appellant, outside the presence of the jury, called a D.P.S. polygraph operator who testified he interviewed Burns and then gave him a lie detector test. The operator testified that Burns denied firing the fatal shot, but that the results of the lie detector tests showed he was lying. The court refused to permit this evidence before the jury. The results of a polygraph examination is not admitted on behalf of either party. *Lewis v. State*, 500 S.W.2d 167 (Tex.Cr.App.1973); *White v. State*, 496 S.W.2d 642 (Tex.Cr.App.1973).

which in itself, unrelated to other proven facts, will be sufficient corroboration. It is. the combined and cumulative weight of the evidence furnished by non-accomplice witnesses which supply the test. If by this rule it appears on appeal that before the jury there was proof confirming the testimony of the accomplice to material facts tending to connect the accused with the commission of the offense, the law is satisfied."

■ Thus, it is clear that the accomplice witness need not be corroborated in all of his testimony, *Shannon v. State*, 567 S.W.2d 510 (Tex.Cr.App.1978); *Edwards v. State*, supra, and the corroboration need not directly link the accused to the crime or be sufficient in itself to establish guilt. *Lyman v. State*, 540 S.W.2d 711 (Tex.Cr.App. 1976); *Bentley v. State*, 520 S.W.2d 390 (Tex.Cr.App.1975).

■ Applying the test discussed in *Edwards v. State*, supra, we eliminate Burns' testimony, who was an accomplice witness as a matter of law, and look to the other evidence to see whether it is sufficient to corroborate the accomplice witness.[2]

■ There was much evidence, outside of Burns' testimony showing the commission of the offense. The statute (Article 38.14, supra) makes clear that mere evidence of the commission of the offense is not sufficient evidence of corroboration. See also 24 Tex.Jur.2d, Evidence, § 694, p. 326. And evidence corroborating what the accomplice witness said he and others did and not tending to connect the appellant with the crime charged cannot be considered. See *Anders v. State*, 501 S.W.2d 665 (Tex.Cr. App.1973); *O'Donald v. State*, 492 S.W.2d 584 (Tex.Cr.App.1973); *Odneal v. State*, 117 Tex.Cr.R. 97, 34 S.W.2d 595 (1931); *Noble v. State*, 100 Tex.Cr.R. 404, 273 S.W. 251 (1925).

The State calls attention to the fact that Ranger Johnson found the Mulkey rifle in Wolfe City Lake where Burns testified he

(Burns) threw the rifle when in company with the appellant. This evidence tends to corroborate what the accomplice witness said he did and does not tend to connect the appellant with the crime. Such testimony cannot be considered. *Anders v. State*, supra. The State notes that Burns testified as to the position of the victim after the shooting when he alone drove down Main Street, and that this position of the victim was corroborated by Sheriff Blankenship and others. Here again, Burns was corroborated as to what he saw or observed, but this does not tend to incriminate the appellant and cannot be considered. *Anders v. State*, supra. The same is true of Burns' testimony that the deceased's patrol car was parked in front of the bank which was verified by Sheriff Blankenship.

James Ray Dawson and Dennis Hooe placed Burns and the appellant together at a Mobil service station about midnight or later on July 8, 1975, just as Burns testified. This testimony that appellant and Burns were together some three hours or so before the alleged offense must be considered in light of the fact that both the appellant and Burns lived in the Wolfe City vicinity. *Rogers v. State*, 461 S.W.2d 399, 402 (Tex. Cr.App.1970). It is not sufficient corroboration merely to show the accused and the accomplice witness were together shortly before or shortly after the commission of the alleged offense. *Crawford v. State*, 149 Tex.Cr.R. 581, 197 S.W.2d 575 (1946); *Smith v. State*, 144 S.W.2d 542 (Tex.Cr.App.1940); *Dean v. State*, 131 Tex.Cr.R. 149, 97 S.W.2d 472 (1936); *Cherb v. State*, supra; *Moore v. State*, 521 S.W.2d 263 (Tex.Cr.App.1975). See also *Rogers v. State*, supra, and *Thomas v. State*, 166 Tex.Cr.R. 331, 313 S.W.2d 311 (1958); *Lyman v. State*, 540 S.W.2d 711 (Tex.Cr.App.1976).

■ The State calls attention to the testimony that appellant's fingerprint was lifted from a window of Mulkey's pickup truck from which Mulkey on July 9, 1975 reported a .22 caliber rifle had been stolen. This

---

2. In applying the test as to the sufficiency of the corroboration, each case must be considered on its own merits. *Etheredge v. State*,

542 S.W.2d 148 (Tex.Cr.App.1976). See also 23 C.J.S., Crim.Law, § 812(6)(a), p. 134.

serves in part to corroborate Burns' testimony that appellant on the morning of July 8, 1975 had approached a pickup truck parked near Celeste. There was testimony, however, that a fingerprint could have been there possibly as long as two weeks before being lifted. Burns testified that appellant had stolen a .22 caliber rifle from the pickup at Celeste. If it can be said appellant's fingerprint on the truck corroborates Burns sufficiently as to the theft of the rifle, it is observed that evidence which verifies extraneous matters without tending to connect the accused to the actual crime charged is insufficient. *Reynolds v. State*, 489 S.W.2d 866 (Tex.Cr.App.1972). Further, it is noted that Ginn, the firearms examiner, testified that after tests there was an insufficient correlation between the test bullets fired from the Mulkey weapon and the bullet fragments taken from the victim for him to say the Mulkey weapon fired the fatal shot. It was shown that eight different models of .22 caliber rifles could have fired the fatal shot, and 558,000 rifles of the same model as the Mulkey weapon had been manufactured.

■ The court charged on the law of accomplice witnesses (Article 38.14, V.A.C.C.P.) and also gave a charge on the law of circumstantial evidence.[3]

■ Under the circumstances of this particular case, we cannot conclude that the evidence of the accomplice witness Burns was sufficiently corroborated to satisfy the requirements of Article 38.14, V.A.C.C.P.

We need not therefore consider appellant's contentions whether there was error in admitting evidence of an extraneous offense concerning the theft of a .22 caliber rifle at Celeste,[4] nor need we consider appellant's other contention that he could not have been legally convicted of capital murder because the State failed to prove, as alleged, that the deceased was a peace officer at the time of the alleged offense.[5]

■ This court is bound by the decisions of the United States Supreme Court in *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), and *Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978), which applied *Burks* to the states. These decisions require that a defendant having once been placed in jeopardy and the evidence having been found insufficient, no further prosecution may be had. See also *Morr v. State*, 587 S.W.2d 711 (Tex.Cr.App.1979); *Brasfield v. State*, 600 S.W.2d 288 (Tex.Cr.App.1980); *Sanne v. State*, 609 S.W.2d 762 (Tex.Cr.App.1980); and *Ex parte Reynolds*, 588 S.W.2d 900 (Tex.Cr.App.1979).

The judgment of conviction is set aside and is reformed to reflect an acquittal.

---

3. A charge on the law of circumstantial evidence is not normally necessary where the State's evidence is direct and positive even though it is that of an accomplice witness. *Ford v. State*, 507 S.W.2d 735 (Tex.Cr.App. 1974); *Bradley v. State*, 450 S.W.2d 847 (Tex. Cr.App.1969); *Blankenship v. State*, 448 S.W.2d 476 (Tex.Cr.App.1969); *Lopez v. State*, 92 Tex.Cr.R. 97, 242 S.W. 212 (1922). Article 36.14, V.A.C.C.P., note # 442. Where the accomplice witness testifies to an admission against interest by the defendant confessing the crime, a charge on circumstantial evidence need not be given. *Swift v. State*, 509 S.W.2d 586 (Tex.Cr.App.1974), and cases there cited. See also *Tyler v. State*, 78 Tex.Cr.R. 279, 180 S.W. 687 (1915). Burns, the accomplice witness, testified in the instant case that he did not hear a shot and did not relate he saw the offense committed. The admission against interest by the appellant testified to by Burns was "I did it." The careful trial judge undoubtedly considered that Burns' testimony did not make out a complete case against the appellant and the statement "I did it" was too vague to identify what appellant did or to constitute an admission of the actual crime charged. Cf. *Hielscher v. State*, 511 S.W.2d 305 (Tex.Cr. App.1974). It would appear that the charge on the law of circumstantial evidence was given on this basis.

4. Appellant argues that even under Burns' testimony there was no discussion of killing White until after the theft of the rifle and that the theft was not committed in anticipation of the alleged offense and therefore should have been excluded.

5. The record shows that the deceased was designated as a "nightwatchman" under an ordinance of Wolfe City. Appellant argues that such is not a peace officer as defined by Article 2.12, V.A.C.C.P., and that he could not be convicted of capital murder under V.T.C.A., Penal Code, § 19.03(a)(1).