

# NUMBER 13-21-00441-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**CHRISTOPHER ISADORE VARELA JR.,**                                    **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                           **Appellee.**

---

### On appeal from the 24th District Court of Victoria County, Texas.

---

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Longoria and Silva**
**Memorandum Opinion by Chief Justice Contreras**

Appellant Christopher Isadore Varela Jr. was convicted of murder and tampering with physical evidence, both first degree felonies. *See* TEX. PENAL CODE ANN. §§ 19.02(c), 37.09. He pleaded true to an enhancement paragraph and was sentenced to prison terms of ninety-nine and twenty years, respectively. On appeal, he argues: (1) the trial court erred by allowing rebuttal testimony about an unadjudicated extraneous offense; and

(2) the evidence failed to corroborate the testimony of an accomplice with respect to the tampering offense. We affirm as modified.

## I. BACKGROUND

Varela was charged with the murder of 71-year-old Melvin Fabian on or about February 1, 2019. At trial, Fabian's sister-in-law testified she and her husband went to visit Fabian on February 3, 2019. When they arrived at his apartment on Miori Lane in Victoria, her husband noticed that there were three holes in the front door. She opened the door, saw Fabian's dead body on the floor, and called 911.

Detective Amy Grothe of the Victoria Police Department served as the lead investigator. At trial, she identified photographs of Fabian's front door, which contained dark "scuff marks" as well as indentations showing that shots had been fired from the outside in. There was blood spatter at the base of the inside of the door, and a hair could be seen at the top of a bullet hole, which Grothe opined indicated that Fabian was "up against the door when he was shot." Grothe interviewed the manager of the apartment complex, who said that he had heard gunshots and saw a red SUV leaving the scene. Three spent bullet casings and two bullets were recovered from the scene.

Police contacted Jimmie Sturm, Fabian's ex-wife, who was listed as his emergency contact on the apartment lease. Jimmie stated that she visited Fabian around 7:00 p.m. on February 1 in order to pay back some money she owed to him. She said Fabian got upset, and so she left. Jimmie also told police that her daughter, Sarah Sturm Cisneros, came to visit her on the night of February 1. Surveillance video showed Cisneros, Varela, and Juan Morales arriving at Jimmie's apartment complex in a red Jeep SUV at around 9:00 p.m. on February 1. Around fifteen minutes later, Jimmie left in her car, and the other

2

three left in the Jeep. Grothe interviewed Cisneros, who said that the Jeep belonged to Morales and that she had been dating Varela for about a month. Cisneros reported that Fabian did not get along with her because "she dated black men." Cisneros indicated to police that her ex-boyfriend, a black man, might be responsible for Fabian's death.

Subsequently, Jimmie's husband Ronald Sturm came to the police station and reported that his daughter, Cisneros, had confessed that she was responsible for the murder, along with Morales and their roommate Chrissy Rodriguez. Ronald testified to that effect at trial. According to Ronald, Cisneros also told him that the "weapon and stuff" were hidden in an abandoned school bus on Ronald's parents' property in Goliad County. When police searched the bus, they found a nine-millimeter Beretta pistol wrapped in a bandana, and boots in a paper bag. Grothe testified she was "confident" that the scuff marks found on Fabian's door were made by these boots.

Cisneros, Morales, and Rodriguez were arrested on February 8, 2019. According to Grothe, when they were interviewed, they each independently said "they were afraid because Varela was still out and was staying at the house with the children.[1] They were afraid that he was going to harm them and that they had mentioned some statements he made about his previous history." They explained to Grothe that Varela was a member of MS-13, a criminal gang. Varela was arrested on February 19, 2019. He told police that he was out of town on February 1 and that he did not know anything about the murder.

Later, forensic examinations were performed on the items recovered from the abandoned school bus. DNA matching Cisneros and Varela was found on the bandana wrapping the pistol, and DNA matching Varela was found on the boots. Moreover, a

---

[1] Varela was living at the same residence as Cisneros, Rodriguez, and Cisneros's four children.

3

firearms examiner testified that she test-fired the recovered pistol, and she opined that the three spent casings and two bullets recovered from the crime scene were fired from that pistol.

At trial, Jimmie testified that when she went to Fabian's apartment on the evening of February 1, they argued and Fabian "tried to hit" her. When Cisneros, Varela, and Morales came to her apartment, Jimmie told Cisneros about this, and Cisneros became upset. Cisneros, Varela, and Morales left Jimmie's apartment and returned a couple of hours later, at which point Jimmie observed Varela "sitting on the floor at the end of the bed cleaning a [black pistol]" with a "blue bandan[]a." Jimmie left the room, but Varela followed her and told her "to shut up and if I didn't, he would kill my son, my grandchildren, my daughter, and then me."

Rodriguez testified that on February 1, she was watching Cisneros's children when she saw Cisneros, Varela, and Morales leave in the Jeep to visit Jimmie. After an hour, they came back, and Morales gave her a ride to her workplace. Rodriguez stated that, before Morales dropped her off, he told her "something bad had happened." The next day, Varela told Rodriguez "that he had killed somebody . . . that he had kicked in the door and started shooting and that he went back to the car." She said she initially did not report this to police because she was scared of what Varela would do. When she was arrested, she told police what Varela said, and she was released from custody.

Cisneros testified that she agreed to testify in Varela's trial as part of a plea bargain arrangement. She said that she often argued with Fabian about his "mistreat[ment]" of Jimmie, and that Fabian "didn't like [her] being with a black man." Cisneros recalled that Fabian once threatened to kill her, her children, her mother, and her nephew. She said

4

she started dating Varela in early January of 2019. She had seen Varela carry a black handgun on the back of his waistband on occasion, but she was unsure if he had one on the date of Fabian's murder. She knew that Varela was a member of MS-13.

According to Cisneros, on February 1, 2019, Jimmie reported that she and Fabian got into an argument and that he hit her. Cisneros, Varela, and Morales went to Fabian's apartment in Morales's red Jeep. Cisneros said she "wanted to go over there and tell [Fabian] to leave my mom alone . . . , but I didn't know how he was going to react," so she parked where Fabian could not see the car. Cisneros testified that she got out of the car, "walked halfway to [Fabian]'s apartment, turned around, and went back to the car" because she was "scared." At that point, Varela got out of the car and approached the apartment. Cisneros said Varela "kicked the door one time real hard" and Fabian cracked open the door. She then saw Varela pull something from the back of his pants, and she heard "three pops." When they returned to Jimmie's apartment, Cisneros told her mother about what happened, and Varela threatened to kill Cisneros and her family. Cisneros testified that she wiped down the gun at Varela's request. She conceded it was possible she told Rodriguez that she herself committed the shooting, because she was scared of Varela.

Cisneros said that, a couple of days after the murder, she went with Varela to her grandparents' house in Goliad County. When they were there, she realized Varela had a "bag with the shoes and the gun in it," and she told him to leave those items in the abandoned bus on the property. Cisneros said she initially lied to police because she was afraid of Varela.

5

Morales testified that he pleaded guilty to the felony offense of hindering apprehension and spent two years in jail. He recalled that, when he, Cisneros, and Varela arrived at Fabian's apartment complex, Cisneros and Varela got out of the car to approach the apartment. Then, after Cisneros returned to the car, Morales heard three gunshots and he heard Cisneros scream, "He shot him." Varela then returned to the car carrying a small silver handgun.[2] He later told Rodriguez what happened.

Cisneros's seventeen-year-old nephew B.B.[3] testified he gave an interview at Hope of South Texas shortly after Fabian's murder. According to B.B., he told the interviewer as follows: "[Varela] said that they went over there. He knocked on the door. He opened the door. He asked him if he was [Fabian]. [Fabian] said yes. [Varela] pulled out his gun. [Fabian] tried to hide back behind the door, and [Varela] shot him through the door." B.B. clarified that "they" meant Cisneros, Varela, and Morales.

The prosecutor then asked B.B. about what he told police when they informed him and Jimmie, his grandmother, about Fabian's death. The following colloquy occurred:

Q.    . . . Now, do you remember when those two officers came to the apartment . . . to tell you guys that [Fabian] had passed away, that you told that officer something about a bag and going out into the country?

Do you remember something about that?

A.    Yes.

Q.    And what was that about?

A.    That they had c[o]me over and asked to use the car because they said they had to go take something out there.

Q.    And when you say "something out there," where are we talking

---

[2] Morales denied that the gun found in the abandoned bus was the one he saw Varela carrying.

[3] The witness was fourteen years old at the time of the shooting. We use initials to protect his identity, as the parties do.

about?

A.    To my—I guess my great-grandma.

Q.    Okay. The Sturms?

A.    Yes.

Q.    All right. And did you tell the [Hope of South Texas interviewer] at the time that you had seen [Varela] with a bag?

A.    Yes.

Q.    And did you—could you tell what was in the bag?

A.    It looked like shoes.

. . . .

Q.    And do you remember telling the [Hope of South Texas interviewer] that [Varela] also told you where they hid the gun?

A.    Yes.

Q.    And you also knew about the gun being wrapped in a black bandan[]a, didn't you?

A.    Yeah.

. . . .

Q.    Do you remember telling the [Hope of South Texas interviewer] why [Varela] wanted to hide his shoes?

A.    What you—why he wanted to hide them?

Q.    Why do you think [Varela] wanted to hide the shoes out at your grandparents' house?

. . . .

A.    Because [of] what they were used for.

Q.    What were they used for?

A.    A murder.

Q.    How so? Why was it important to hide the shoes?

. . . .

    A.      Because the footprints of the shoes could be on the door.

B.B. further testified that, on February 13, 2019, Varela sent him a text message saying, "Everything['s] my fault."

Varela was convicted as charged and this appeal followed.

## II.    DISCUSSION

### A.    Extraneous Offense Evidence

By his first issue on appeal, Varela argues that the trial court erred in admitting evidence that he threatened Cisneros with a gun a few days before the murder. A trial court's ruling on the admissibility of extraneous offenses, like any other evidentiary ruling, is reviewed under an abuse of discretion standard. *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011). A trial court does not abuse its discretion if its decision is within the "zone of reasonable disagreement." *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991).

During Cisneros's testimony, the prosecutor stated at a bench conference that she expected Cisneros to testify about "a time when [Varela] pointed [a] gun at her and she was very afraid." Defense counsel objected on grounds that he had not been notified prior to trial that the State would seek to introduce such testimony. *See* TEX. R. EVID. 404(b)(2). After observing that the notice was given "before [she] learned of the specifics," the prosecutor agreed to narrow the scope of her questioning "to the point [that Cisneros] has . . . seen the weapon and was aware he had it and carried it on his person at times" without "go[ing] into the fact that he brandished it at her." While still at the bench, the prosecutor instructed Cisneros not to discuss the time Varela pointed a gun at her. Cisneros complied with the instructions.

8

After Cisneros's cross-examination, the prosecutor again sought to introduce testimony about Varela threatening Cisneros with a gun, asserting that defense counsel opened the door to the issue through his questioning. Specifically, the prosecutor argued that the extraneous offense evidence "is relevant to rebut [defense counsel's] assertion that [Cisneros] didn't have a reason to be fearful of [Varela]." At a hearing outside the presence of the jury, Cisneros explained that, a few days before Fabian's murder, she and Varela got into an argument after Varela tried to discipline one of her children; Varela then threatened Cisneros by pointing a gun against her stomach. Cisneros said she did not inform police of this threat, and the prosecutor conceded that it was not included in the State's pre-trial notification of extraneous offenses. The court overruled Varela's objections and allowed the testimony, finding that the evidence is "relevant" and that "there's no evidence that the State willfully withheld this evidence from the [d]efense." Cisneros then testified before the jury about the threat.[4]

On appeal, Varela contends that the trial court erred in admitting this evidence. He cites Texas Rule of Evidence 404(b), which provides generally that evidence of an extraneous offense is "not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," though such evidence may be admissible for "another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."

---

[4] The jury charge contained the following limiting instruction:

The State has introduced evidence of extraneous crimes or bad acts other than the one charged in the indictment in this case. This evidence was admitted only for the purpose of assisting you, if it does, for the purpose of showing the defendant's motive, intent, plan, knowledge, common scheme or plan or absence of mistake, if any. You cannot consider the testimony unless you find and believe beyond a reasonable doubt that the defendant committed these acts, if any, were committed.

9

TEX. R. EVID. 404(b). "On timely request by a defendant in a criminal case, the prosecutor must provide reasonable notice before trial that the prosecution intends to introduce such evidence—other than that arising in the same transaction—in its case-in-chief." TEX. R. EVID. 404(b)(2). But "there is an exception to this notice requirement when the defense opens the door to such evidence by presenting a defensive theory that the State may rebut using extraneous-offense evidence." *Dabney v. State*, 492 S.W.3d 309, 317 (Tex. Crim. App. 2016).

It is undisputed that the subject testimony was not included in the State's pre-trial notice, and Varela argues on appeal that the exception to the notice requirement does not apply because "[d]efense counsel did not ask about anything specific that [Varela] had done or said, nor did counsel ask about anything relating to the pistol." Varela further argues that the evidence was not admissible because it was not relevant to any of the non-character-conformity issues specified in Rule 404(b) such as motive, intent, plan, or knowledge.

In response, the State argues that the issue has not been preserved because defense counsel did not object under Rule 404(b), nor did counsel object that Cisneros's testimony was inadmissible as evidence of an extraneous offense, bad act, or crime. The State notes that, at trial, defense counsel never objected to Cisneros's testimony on the basis that it had no bearing on non-character-conformity issues such as motive, intent, plan, or knowledge. *See* TEX. R. EVID. 404(b)(2). Defense counsel also never objected on the basis that the testimony was, on balance, more prejudicial than probative. *See* TEX. R. EVID. 403 (providing that evidence may be excluded "if its probative value is substantially outweighed by a danger . . . unfair prejudice"); *see also Montgomery*, 810

10

S.W.2d at 377 ("The exclusion of other wrongs evidence under Rule 404 is based, not on its lack of probative value, but rather on its unfair prejudicial effect. . . . In short, Rule 404(b) is simply a specific codification for a general balancing determination under Rule 403."). Accordingly, to the extent Varela argues on appeal that the testimony was inadmissible for those reasons, we agree with the State that the issue has not been preserved. *See* TEX. R. APP. P. 33.1(a)(1) (regarding preservation of error for appeal). The record instead reflects that counsel objected to Cisneros's testimony only on the basis that it was "new information"; i.e., that it was not included in the State's pre-trial notice. Therefore, even though counsel did not specifically cite Rule 404(b), we find that the issue has been preserved to the extent Varela argues that the evidence was inadmissible because it was not disclosed by the State prior to trial.

As noted, extraneous offense evidence may be admissible despite the lack of pre-trial notice when the defense opens the door "by presenting a defensive theory that the State may rebut" by using such evidence. *Dabney*, 492 S.W.3d at 317. Here, the State quotes the following exchange as having opened the door to the extraneous offense evidence:

| Q. [Defense counsel] | . . . Was there something scary about [Varela] at that point in time [when you first met him]? |
|---|---|
| A. [Cisneros] | Not at that point, no. |
| Q. | The only time you were scared is after you went to [Fabian]'s apartment on the 1st of February; is that right? |
| A. | No, sir. |
| Q. | Oh, you were scared before that? |
| A. | Yes, sir. |

11

The State contends that, by this line of questioning, defense counsel made "the basis for [Cisneros's] fear of [Varela]" a "fact of consequence" which was clarified by the challenged rebuttal testimony. *See Rankin v. State*, 974 S.W.2d 707, 709 (Tex. Crim. App. 1996) (observing that, under Rules of Evidence 401, 402, and 404, evidence is admissible if it (1) is introduced for a purpose other than character conformity, (2) has relevance to a "fact of consequence" in the case, and (3) remains free of any other constitutional or statutory prohibitions); *Houston v. State*, 208 S.W.3d 585, 591 (Tex. App.—Austin 2006, no pet.) ("A defendant opens the door by asking a question which creates a false impression that the admission of extraneous offense evidence would correct.").

We agree. Defense counsel's questions were designed to elicit responses which would cast doubt on Cisneros's earlier testimony regarding the reason why she initially failed to identify Varela and lied to police—i.e., because she was afraid of Varela. Even though counsel did not specifically ask about the gun, the questions promoted a defensive theory that Cisneros was lying about being afraid of Varela.[5] The State was entitled to ask questions of Cisneros which would rebut this theory, including asking about specific instances which could have generated her fear. *See Houston*, 208 S.W.3d at 591 ("When a party opens the door, opposing counsel is permitted to present evidence to correct the mistaken impression."). The trial court did not abuse its discretion in overruling Varela's objection to this evidence. *See Jensen v. State*, 66 S.W.3d 528, 540 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd) (finding, where defense counsel questioned witness about her "rocky relationship" with appellant and whether children were afraid of appellant, that

---

[5] Under this defensive theory, the real reason Cisneros initially failed to name Varela as a participant in the crime is because he was not, in fact, a participant in the crime.

12

"appellant opened the door to evidence of other crimes, wrongs, and acts").

Varela's first issue is overruled.

## B      Accomplice Testimony Corroboration

By his second issue, Varela contends the evidence was insufficient to corroborate Cisneros's testimony regarding the offense of tampering with evidence.

### 1.      Standard of Review and Applicable Law

Article 38.14 of the Texas Code of Criminal Procedure provides that a "conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense." TEX. CODE CRIM. PROC. ANN. art. 38.14. This rule "reflects 'a legislative determination that accomplice testimony implicating another person should be viewed with a measure of caution, because accomplices often have incentives to lie, such as to avoid punishment or shift blame to another person.'" *Zamora v. State*, 411 S.W.3d 504, 509–10 (Tex. Crim. App. 2013) (quoting *Blake v. State*, 971 S.W.2d 451, 454 (Tex. Crim. App. 1998)); *see Walker v. State*, 615 S.W.2d 728, 731 (Tex. Crim. App. [Panel Op.] 1981) ("[T]he testimony of an accomplice witness is to be carefully scrutinized not only because of any interest he or she might have but because his [or her] testimony is evidence from a corrupt source.").

When an appellant argues that the accomplice testimony was not sufficiently corroborated, "the reviewing court eliminates all of the accomplice testimony from consideration and then examines the remaining portions of the record to see if there is any evidence that tends to connect the accused with the commission of the crime." *Castillo v. State*, 221 S.W.3d 689, 691 (Tex. Crim. App. 2007); *Solomon v. State*, 49

13

S.W.3d 356, 361 (Tex. Crim. App. 2001). "The non-accomplice evidence does not have to directly link appellant to the crime, nor does it alone have to establish his guilt beyond a reasonable doubt." *McDuff v. State*, 939 S.W.2d 607, 613 (Tex. Crim. App. 1997); *Dowthitt v. State*, 931 S.W.2d 244, 249 (Tex. Crim. App. 1996). Rather, "[t]here must simply be *some* non-accomplice evidence which *tends* to connect appellant to the commission of the offense alleged in the indictment." *Castillo*, 221 S.W.3d at 691. "Even apparently insignificant incriminating circumstances may sometimes afford satisfactory evidence of corroboration." *Dowthitt*, 931 S.W.2d at 249. "[W]hen there are conflicting views of the evidence—one that tends to connect the accused to the offense and one that does not—we will defer to the factfinder's resolution of the evidence." *Smith v. State*, 332 S.W.3d 425, 442 (Tex. Crim. App. 2011).

"An accomplice is someone who participates with the defendant before, during, or after the commission of a crime and acts with the required culpable mental state." *Druery v. State*, 225 S.W.3d 491, 498 (Tex. Crim. App. 2007). It is undisputed that Cisneros was Varela's accomplice as a matter of law. *See Smith*, 332 S.W.3d at 439 ("A witness who is indicted for the same offense or a lesser-included offense as the accused is an accomplice as a matter of law. But if the State dismisses the indictment before the witness testifies, the witness is no longer deemed an accomplice as a matter of law. A witness continues to be regarded as an accomplice, however, if the witness agrees to testify against the accused in exchange for the dismissal of the charge."). Accordingly, the jury was properly instructed that it may not convict Varela based on Cisneros's testimony unless her testimony is "corroborated by other evidence tending to connect [Varela] with the offense charged."

14

**2.      Analysis**

The charge instructed the jury to find Varela guilty of tampering with physical evidence only if it found beyond a reasonable doubt that Varela, knowing that the offense of murder or deadly conduct had been committed, intentionally or knowingly concealed "a firearm or a pair of shoes" with intent to impair their availability as evidence in any subsequent investigation or official proceeding related to the offense. *See* TEX. PENAL CODE ANN. § 37.09.[6] Varela asserts that "[t]he only evidence that linked [him] to how the pistol and the boots came to be found on the school[ ]bus was Cisneros'[s] testimony." He claims that "the evidence left after eliminating Cisneros['s] testimony is insufficient to sustain" the tampering conviction.

We disagree. Aside from Cisneros's testimony, the evidence included the testimony of B.B., who stated that he told police that Cisneros, Varela, and Morales "asked to use the car because they said they had to go take something" to his grandparents' property after the murder. B.B. also testified that he told the Hope of South Texas interviewer that: (1) Varela had a bag containing something that "looked like shoes"; (2) Varela told him "where they hid the gun"; and (3) Varela wanted to hide the shoes because they could be used to link him to Fabian's murder. Moreover, Varela's DNA was found on both the gun and the shoes which were found in the abandoned bus. This evidence "tend[s] to connect" Varela with the crime of tampering with physical evidence as alleged. *See* TEX. CODE CRIM. PROC. ANN. art. 38.14; *Castillo*, 221 S.W.3d at

---

[6] Varela does not dispute that the act of placing the items in the abandoned bus constitutes "concealment" for purposes of the statute. *See Stahmann v. State*, 548 S.W.3d 46, 57 (Tex. App.—Corpus Christi–Edinburg 2018) ("Actual concealment requires a showing that the allegedly concealed item was hidden, removed from sight or notice, or kept from discovery or observation."), *aff'd*, 602 S.W.3d 573 (Tex. Crim. App. 2020).

15

691. Varela's second issue is overruled.

### III. MODIFICATION OF JUDGMENT

The judgment of conviction for tampering with physical evidence states that the statute for the offense is "19.02 (c) Penal Code." We modify the judgment to recite the correct statute number for this offense: Texas Penal Code § 37.09. *See Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993) (noting that we have the power to modify a judgment to speak the truth when we are presented with the necessary information to do so).

### IV. CONCLUSION

The trial court's judgments are affirmed as modified. *See* TEX. R. APP. P. 43.2(b).

DORI CONTRERAS
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
23rd day of February, 2023.

16