NO. 07-08-0289-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

AUGUST 26, 2009
_____

CASEY NELSON, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE
_____

FROM THE 16TH DISTRICT COURT OF DENTON COUNTY;

NO. F-2006-1749-A; HONORABLE C. RIVERA-WORLEY, JUDGE
_____

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

**OPINION**

Appellant, Casey Nelson, was convicted of murder[1] and sentenced to 25 years confinement in the Institutional Division of the Texas Department of Criminal Justice (ID-TDCJ). It is from this judgment that appellant appeals. We affirm.

---

[1] TEX. PENAL CODE ANN. § 19.02 (Vernon 1994).

Factual and Procedural Background

In 1999, while clearing land in Lewisville, Texas, Don Pittman found what he thought was a human bone. After the local police department was notified and the bone was determined to be of human origin, a complete search of the work site resulted in the recovery of a partial human skeleton. Dr. Dana Austin, a forensic anthropologist for the Tarrant County Medical Examiner's Office was asked to assist. Once Dr. Austin examined the remains, she determined that they belonged to a white or Hispanic male between 18 and 20 years of age. Later examination of the remains, by other members of the Tarrant County Medical Examiner's office, revealed that the deceased had suffered a perimortem blunt force trauma to the head. The remains languished until 2006 when Detective Richard Anders of the Lewisville Police Department received a phone call from Diana Schraer about the skeletal remains. Mrs. Schraer advised Anders that her son, Santino Schraer, had been missing since 1997. After obtaining the dental records of Schraer and a DNA swab from Mrs. Schraer, the deceased was confirmed to be Santino Schraer.

Once the name of Schraer was confirmed, Det. Anders began trying to determine the facts surrounding the death of Schraer. By his investigation, Anders developed a picture of a group of young people who loitered around the home of Danny Smith in Lewisville. At this home, the young people were able to use drugs, drink alcohol, and socialize as they wished without any adult supervision. In 1997, several members of this group had a party at a motel in Lewisville. While attending the party, Schraer was accompanied by, or met up with, a young 12 year old female. It was later alleged that, while at the motel, Schraer had raped the 12 year old. When word of the alleged rape

2

spread around the group, members became incensed and a number of suggestions were made regarding Schraer. No plan of action was decided on but several of the group thought that Schraer should be, at least, beat up.

On September 20, 1997, appellant, Marshall Mashburn, Schraer, Jeffrey Stealey, Randall Horton, and Alisha Fowler were all gathered at Danny Smith's back yard. While Schraer was seated at a table, Mashburn approached from the rear with a three foot length of metal pipe in his hands. Mashburn struck Schraer on the back of the head and Schraer slumped forward. Immediately, appellant grabbed Schraer by the leg or legs and dragged him out the driveway to a pickup truck. The testimony at trial indicated that appellant loaded Schraer into the bed of the pickup truck. After Schraer was loaded in the truck, Mashburn and Stealey got in the back of the truck while appellant got behind the wheel and drove off. Appellant eventually drove to a field near Interstate 35 in Lewisville where the body of Schraer was left to be found two years later.

During the trial, testimony revealed that Schraer was not dead when he was placed in the truck. Both Mashburn and Stealey beat him after he was placed in the truck. Horton further testified that, when appellant, Mashburn, and Stealey left with the body, he and Fowler left in a car and attempted to find appellant and the pickup. Having failed to find the pickup, Horton and Fowler returned to the Smith house, where the initial assault took place, and awaited the return of the pickup. When the pickup truck came back, Horton went with the other three to wash out the bed of the pickup. A couple of days after the attack on Schraer, Stealey took Horton to the site where the body was left.

3

Prior to beginning the trial, appellant filed a motion for continuance alleging that there were three out-of-state witnesses that were material to appellant's defense. A further motion alleged that there was an additional witness located out-of-state that was not available for trial on the scheduled days. The trial court held a pre-trial hearing on the motion and, after hearing the argument of counsel for both appellant and the State, denied the motion for continuance and began the trial as scheduled.

At the trial, Horton and Stealey both testified against appellant. At the conclusion of the testimony on guilt or innocence, appellant requested that the jury be charged that both were accomplices as a matter of law. The trial court granted the requested charge as to Stealey and denied the requested charge that Horton was an accomplice as a matter of law. Appellant then requested that the jury be given a charge allowing the jury to find Horton an accomplice as a matter of fact, which the court also denied. Appellant also objected to the court's charge for failure to properly apply the law of parties and criminal responsibility to the facts of the case. The application paragraph of the court's charge applied the abstract law of parties and criminal responsibility in a general sense but not in detail. The trial court overruled the objection.

The jury found appellant guilty of murder and assessed his punishment at confinement in the ID-TDCJ for 25 years. Appellant has appealed the judgment of the trial court via six issues that allege: 1) the trial court committed error in not charging the jury that Horton was an accomplice as a matter of law; 2) the trial court committed error in not submitting an issue to the jury inquiring as to whether Horton was an accomplice as a matter of fact; 3) the evidence was legally insufficient to support the jury verdict; 4) the

evidence was factually insufficient to support the jury verdict; 5) the trial court committed error in denying appellant's motion for continuance; and 6) the trial court committed error in refusing the requested application paragraph for the law of parties as applied to appellant. Disagreeing with appellant's contentions, we will affirm the judgment of the trial court.

Accomplice Witness

By his first two issues, appellant contends that Horton was an accomplice as a matter of law or, in the alternative, there was a fact question about Horton's status as an accomplice and the trial court should have submitted the issue to the jury. We review the decision of the trial court denying a request for accomplice witness instructions under an abuse of discretion standard. See Paredes v. State, 129 S.W.3d 530, 538 (Tex.Crim.App. 2004). A trial court abuses its discretion when its ruling is not within the zone of reasonable disagreement. Montgomery v. State, 810 S.W.2d 372, 391 (Tex.Crim.App. 1990) (op. on reh'g). Horton's status as an accomplice is critical because of how accomplice witness testimony is viewed by the courts. Before a conviction can be based on an accomplice's testimony, the testimony must be corroborated by independent evidence tending to connect the accused to the crime. TEX. CRIM. PROC. CODE ANN. art. 38.14 (Vernon 2005). An accomplice is someone who participates with the defendant before, during, or after the commission of a crime and acts with the required culpable mental state. See Druerey v. State, 225 S.W.3d 491, 498 (Tex.Crim.App. 2007). The accomplice witness participation with the defendant must involve some affirmative act that promotes the commission of the offense with which the defendant is charged. Id. Simply

5

having knowledge of the offense and not disclosing that information, or even trying to conceal the information, does not render a witness an accomplice. Id. Finally, mere presence at the scene does not render a witness an accomplice. Id. In the final analysis, if the witness could not be prosecuted for the offense with which the defendant is charged, or a lesser included offense, the witness is not an accomplice witness as a matter of law. Id.

We will first review the record to determine whether or not Horton was an accomplice witness as a matter of law. The testimony at trial reveals that, prior to the date of the death of Schraer, Horton had learned of the alleged rape by Schraer of the 12 year old. Testimony indicated that the remainder of the group was informed of the alleged rape either directly or indirectly from Horton. The testimony revealed that there was no agreement about what to do to Schraer; at best there was an agreement that something should be done. On the day of Schraer's death, there had been no agreement and, in fact, no one testified that killing him had been discussed. The trial testimony revealed that Horton did not know in advance of Mashburn's plan to strike Schraer with the pipe. After Mashburn delivered the initial blow to Schraer's head, appellant dragged Schraer down the driveway and placed him in the back of a pickup truck. Horton was not involved in this. From that point, the testimony showed that appellant drove the truck while Mashburn and Stealey were located in the bed of the pickup with Schraer. Horton was not there nor involved with the continued beating of Schraer. The testimony at trial showed that Horton and Fowler left the scene of the initial attack and attempted to follow appellant but, Horton and Fowler never found appellant or the pickup. After Horton and Fowler returned to the

6

house, appellant, Mashburn, and Stealey came back without Schraer. After appellant and the others returned to the house, there was a conversation that all of those there that evening should keep quiet about what went on. The record reflects that following this conversation, Horton went with appellant, Mashburn, and Stealey to a car wash where the bed of the truck was thoroughly washed. Horton testified that, a couple of days after the incident, he got Stealey to take him to the site where the body was and that Horton left Schraer's drivers license near the body. Horton testified that he remained quiet about the offense until questioned about it by law enforcement.

Appellant would have us conclude that Horton was an accomplice as a matter of law because he was involved in the planning, execution, and covering up of the murder. Appellant's analysis fails because the record demonstrates that the planning was nonexistent. At best, Horton informed the group about the alleged rape and the group thought something ought to be done about it. However, there was no plan and no evidence of a plan. The evidence reflected that Horton did not participate in the execution of the murder of Schraer. At best, Horton was present. Finally, the cover up involved the possible destruction of evidence by washing the truck at a time when the murder was already completed.

Based upon the record, it appears that Horton was present at the scene when the first blow was struck, however, the testimony of other witnesses including the medical examiner reveal that Schraer was not killed by that first blow. No one testified to any action by Horton until the vehicle returned without Schraer. Horton's actions in assisting in the washing out of the pickup truck bed might be described as tampering with physical

7

evidence in violation of section 37.09 of the Texas Penal Code. However, such conduct does not make Horton an accomplice as a matter of law to Schraer's murder. Horton's conduct in assisting in the washing of the pickup truck bed was not done with requisite culpable mental state involved in the offense of Schraer's murder as charged against appellant. That is, Horton's actions in assisting with the washing of the pickup truck were not done with the intent to cause Schraer's death nor with the knowledge that such action would cause the death of the Schraer. Under these facts, Horton was not an accomplice to murder as a matter of law. Id.

We next turn to the issue of whether the trial court erred when it failed to give the jury an issue to determine whether or not Horton was an accomplice as a matter of fact. In reviewing the testimony regarding the actions of Horton, we are convinced that there was not a fact issue raised as to his status as an accomplice. Paredes, 129 S.W.3d at 538-39. Therefore, the trial court did not abuse its discretion in denying appellant's request to submit the question to the jury regarding Horton's status as an accomplice. Id. at 538. However, we note that even were we to determine the trial court erred by not inquiring of the jury as to whether or not Horton was an accomplice, such error was harmless. This is so because there is sufficient non-accomplice evidence existing tending to connect appellant to the offense. See Biera v. State, 280 S.W.3d 388, 394 (Tex.App.–Amarillo 2008, pet. ref'd) (citing Herron v. State, 86 S.W.3d 621, 632 (Tex.Crim.App. 2002)). Specifically, appellant told his sister, Jolene Nelson Hershner, about his participation in the murder and she testified before the jury. Further, appellant told Robert Tedford about his participation in the offense. Alicia Fowler testified that, after Schraer was struck by

8

Mashburn, she heard the truck leave and appellant was with Mashburn and Stealey when they returned in the pickup truck.

We have determined that Horton was not an accomplice witness as a matter of law or fact. Additionally, we have determined that, if the trial court should have given the jury an instruction on accomplice as a matter of fact, that the failure to so charge was harmless. Accordingly, appellant's first and second issues are overruled.

Legal and Factual Sufficiency of the Evidence

In appellant's third and fourth issues he claims the evidence was neither legally nor factually sufficient to sustain the jury's verdict. Since appellant challenges both legal and factual sufficiency, we are required to conduct an analysis of the legal sufficiency of the evidence first and then, only if we find the evidence to be legally sufficient, do we analyze the factual sufficiency of the evidence. See Clewis v. State, 922 S.W.2d 126, 133 (Tex.Crim.App. 1996).

In assessing the legal sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Ross v. State, 133 S.W.3d 618, 620 (Tex.Crim.App. 2004). In conducting a legal sufficiency review, an appellate court may not sit as a thirteenth juror, but rather must uphold the jury's verdict unless it is irrational or unsupported by more than a mere modicum of evidence. Moreno v. State, 755 S.W.2d 866, 867 (Tex.Crim.App. 1988). We measure the legal sufficiency

9

of the evidence against a hypothetically correct jury charge. See Malik v. State, 953 S.W.2d 234, 240 (Tex.Crim.App. 1997).

When an appellant challenges the factual sufficiency of the evidence supporting his conviction, the reviewing court must determine whether, considering all the evidence in a neutral light, the jury was rationally justified in finding the appellant guilty beyond a reasonable doubt. See Watson v. State, 204 S.W.3d 404, 415 (Tex.Crim.App. 2006). In performing a factual sufficiency review, we must give deference to the fact finder's determinations if supported by evidence and may not order a new trial simply because we may disagree with the verdict. See id. at 417. As an appellate court, we are not justified in ordering a new trial unless there is some objective basis in the record demonstrating that the great weight and preponderance of the evidence contradicts the jury's verdict. See id. Additionally, an appellate opinion addressing factual sufficiency must include a discussion of the most important evidence that appellant claims undermines the jury's verdict. Sims v. State, 99 S.W.3d 600, 603 (Tex.Crim.App. 2003). The Court of Criminal Appeals has recently declared that when reviewing the evidence for factual sufficiency, the reviewing court should measure the evidence in a neutral manner "against a hypothetically correct" jury charge. Vega v. State, 267 S.W.3d 912, 915 (Tex.Crim.App. 2008) (citing Wooley v. State, 273 S.W.3d 260, 268 (Tex.Crim.App. 2008)).

Legal Sufficiency Analysis

Appellant contends that the evidence was legally insufficient to show that he had the intent to promote or assist in the commission of the offense of murder. See TEX. PENAL

10

CODE ANN. § 7.02(a) (Vernon 2003). Therefore, according to appellant, the State failed to prove that he was criminally responsible for the murder of Schraer. See TEX. PENAL CODE ANN. § 7.01(a) (Vernon 2003).

When we review the evidence we find the following: 1) appellant was in the backyard at the time Mashburn first struck Schraer, 2) without any prompting from any other participant, immediately after the blow was struck, appellant got to his feet and grabbed Schraer by the leg or legs and dragged him to the pickup truck, 3) appellant placed Schraer in the bed of the pickup truck, 4) appellant already had the keys to the pickup truck, even though the truck belonged to Robert Tedford, 5) no one gave appellant any instructions about where to take the body of Schraer, 6) appellant apparently picked out the location where the body should be left, 7) appellant made inquiry about whether or not Stealey could be trusted to keep his mouth shut or should he be eliminated, 8) appellant admitted his participation in the crime to Robert Tedford, and 9) appellant admitted his participation in the crime to his sister, Jolene Nelson Hershner. When we review all of the above evidence in the light most favorable to the jury's verdict, we cannot say that the jury acted irrationally in finding that the appellant was guilty of the offense of murder. Jackson, 443 U.S. at 319; Ross, 133 S.W.3d at 620. Accordingly, appellant's issue regarding the legal sufficiency of the evidence is overruled.

Factual Sufficiency Analysis

When we review the above referenced evidence in a neutral light, we still find that the evidence is such that a rational jury could have found appellant guilty of murder.

Watson, 204 S.W.3d at 415. Appellant points to no specific evidence that would undermine our confidence in the verdict returned by the jury. See Sims, 99 S.W.3d at 603. Therefore, appellant's issue regarding the factual sufficiency of the evidence is overruled.

## Motion for Continuance

Appellant contends that the trial court committed reversible error when it denied appellant's subsequent motion for continuance filed on April 8, 2008. The trial court conducted a hearing on the motion for continuance on April 9, 2008. Appellant's motion for continuance was based upon the declared necessity to obtain the attendance of three out-of-state witnesses. In the motion, appellant asserted that the trial court had previously found the three out-of-state witnesses' testimony to be material and ordered subpoenas for each to be issued by the court's clerk. Appellant further alleges that the clerk of the court had failed to issue the subpoenas and, therefore, the witnesses had not been served and would not appear. Additionally, appellant alleged there was a fourth witness who was going to be out of the country at the time of trial. Based upon these allegations, appellant contended a continuance was required.

We review the trial court's denial of a motion for continuance under an abuse of discretion standard. Gallo v. State, 239 S.W.3d 757, 764 (Tex.Crim.App. 2007). To establish abuse of discretion, there must be a showing that the appellant was actually prejudiced by the denial of the motion. Id. When the motion for continuance is based upon an absent witness, appellant must show 1) that the appellant has exercised diligence to procure the witness's attendance, 2) that the witness is not absent by the procurement

12

or consent of the appellant, 3) that the motion is not made for delay, and 4) the facts expected to be proved by the absent witness. See TEX. CODE CRIM. PROC. ANN. art. 29.06 (Vernon 2006); Harrison v. State, 187 S.W.3d 429, 434 (Tex.Crim.App. 2005). Further, it must appear to the trial court that the facts which the absent witness would testify to are material. Id. Finally, mere conclusions and general averments are not sufficient for the trial court to determine their materiality. Harrison, 187 S.W.3d at 434.

Appellant's motion for continuance, dated April 8, 2008, complains about the absence of three witnesses for whom out-of-state subpoenas had been ordered. However, the April 8 motion never lists the names of these witnesses nor the name of the alleged fourth witness. Appellant then filed a subsequent motion for continuance, dated April 10, 2008, complaining about the absence of three witnesses, Katherine Pyatt, Robbie Charles Cordes, and Kenneth D. Ancicco. No attempt to explain why there were four witnesses who were alleged to be material in the first motion and only three in the second motion filed only two days later. Now on appeal, appellant appears to be contending that the only action by the trial court that might be an abuse of discretion was the denial of the motion for continuance based on the absence of witness Ancicco. Accordingly, we will address only the motion for continuance as applied to the testimony of Ancicco.

The record reflects that appellant's trial counsel did not seek to have Ancicco subpoenaed as an out-of-state witness, rather, as appellant's trial counsel explained in the subsequent motion for continuance, he was relying on the assurances of appellant's former attorney and the witness that Ancicco would come to Texas voluntarily. The failure to seek a subpoena for the out-of-state witness, Ancicco, or to even bring the matter to the trial

13

court's attention until April 10, 2008, does not demonstrate diligence on the part of appellant. See Dewberry v. State, 4 S.W.3d 735, 756 (Tex.Crim.App. 1999). Further, as to the question of the materiality of the proposed testimony of Ancicco, the record reflects that, in Ancicco's statement attached to the motion for continuance, the witness stated Horton made the statement which would have contradicted his testimony at trial in July or August 1996. The murder for which appellant was convicted occurred in September of 1997. Therefore, the trial court was correct in ruling that the testimony of Ancicco was not material. For the reasons stated, appellant's fifth issue is overruled.

Parties Charge

Appellant's final issue alleges that the trial court committed reversible error when it denied appellant's request for a more specific application of the law of parties, as contained in the application paragraph of the court's charge, to the facts of the case. The charge in question contained a definition of the law of parties in the abstract portion of the charge, to which appellant did not object. In the application paragraph, the charge of the court stated the following:

> Now, if you find from the evidence beyond a reasonable doubt that on or about the 20th day of September, 1997, in Denton County, Texas, the defendant, CASEY NELSON, did then and there, either as an individual or as a party, intentionally or knowingly cause the death of an individual, Santino Schraer, by striking Santino Schraer with a pipe; or did then and there, either as an individual or as a party, with intent to cause serious bodily injury to an individual . . . .

14

Appellant objected to this application paragraph requesting an instruction applying the facts of the case to the general party instruction. No suggested charge was given to the trial court, just an objection to the way the trial court had the paragraph worded.

The review of an alleged charge error is a two step process. See Abdnor v. State, 871 S.W.2d 726, 731 (Tex.Crim.App. 1994). We must first determine whether error occurred; and if so, we then evaluate the error to determine the degree of harm. Id. at 731-32. When evaluating the harm, the degree of harm requiring reversal is dependent upon whether or not appellant objected to the charge. Id. A properly preserved error will call for reversal as long as any harm is shown, that is to say, as long as the error is not harmless. Almanza v. State, 686 S.W.2d 157, 171 (Tex.Crim.App. 1985) (op. on reh'g). If the error is calculated to injure the rights of the defendant, then some harm has been demonstrated. TEX. CODE CRIM. PROC. ANN. art. 36.19 (Vernon 2006).

The State contends that the objection of appellant to the charge was not specific enough to properly preserve any error, if there was any. To support this proposition they cite the court to Villareal v. State. See Villareal v. State, 116 S.W.3d 74, 82-83 (Tex.App.–Houston [14th Dist] 2001, no pet.). While the court in Villareal did find that the objection in that case was not specific enough to preserve error, the court relied upon the Texas Court of Criminal Appeals decision in Chatman v. State, 846 S.W.2d 329, 332 (Tex.Crim.App. 1993). Id. The problem is that in Chatman there was no objection to the charge, in fact what the court said was, "If a defendant desires a more explicit application of a particular method of acting as a party, it is his burden to request such or object to the charge." (emphasis added) Chatman, 846 S.W.2d at 332. Appellant did exactly what the

15

court in Chatman required. Accordingly, we must find that the objection was specific enough to preserve error, if we assume, for the purposes of this opinion, that the failure to give a more specific application paragraph was, in fact, error.

Since error was preserved, we must now examine the record in order to determine if the error is "'calculated to injure the rights of defendant,' which means no more than that there must be some harm to the accused from the error." Almanza, 686 S.W.2d at 171. In short, when error has been properly preserved there will be a reversal unless the error was harmless. Id. The degree of harm is examined in light of the entire jury charge, the totality of the evidence, to include the contested issues and weight of probative evidence, the argument of counsel and any other relevant factor revealed by the record. Id.

Our review of the record reflects that the trial court gave a correct abstract definition of the concepts of parties and criminal responsiblity. In fact, such was stated by counsel for appellant during the charge conference. Further, the application paragraph contains an application of the parties concept, albeit not as specifically as requested, to both of the State's theories of how the murder was committed. Therefore, the charge did properly define party and how a person becomes criminally responsible for another's conduct as a party. Next, we note that the application paragraph uses the term party in applying the conduct of appellant to the theories alleged by the State's indictment. Thus, the jury was given some guidance in applying the law of parties to the facts. The evidence was consistent from the beginning that appellant's conduct was integrally related to the ultimate death of Schraer. All of the witnesses described appellant as having grabbed Schraer by the leg or legs as soon as he slumped forward after being struck. The argument of the

16

State's attorneys was consistent about the acts of appellant and their impact upon the death of Schraer. Nothing in this record demonstrates how appellant was harmed in anyway by the trial court's failure to give the more specific charge in the application paragraph. Therefore, we conclude the error was harmless. Id. Appellant's sixth issue is overruled.

## Conclusion

Having overruled appellant's issues, the judgment of the trial court is affirmed.


Mackey K. Hancock
Justice


Publish.