NO. 07-06-0335-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

OCTOBER 13, 2008

_____


ADRIAN BIERA, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE


_____

FROM THE 140th DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2005-410,709; HON. JIM BOB DARNELL, PRESIDING

_____

Before CAMPBELL and HANCOCK and PIRTLE, JJ.


**OPINION**


A jury found appellant Adrian Biera guilty of aggravated robbery and the trial court assessed punishment at sixty years imprisonment in the Texas Department of Criminal Justice, Institutional Division. Appellant appeals his conviction by four issues. Finding the court erred in its charge to the jury and the error was harmful, we reverse and remand for a new trial.

## Background

On September 7, 2005, at about 6:00 a.m., a Lubbock, Texas, Whataburger restaurant was robbed by two perpetrators armed with handguns. They wore masks, gloves, and camouflage clothing and had with them a bag that a restaurant employee described as a "duffle bag looking thing." The restaurant manager and employee were held at gunpoint while the robbers took money from cash drawers. The manager estimated the robbery lasted three to five minutes and after the robbers fled he called 9-1-1.

The Lubbock police officer who first responded to the call observed loose change on the floor and found an unspent .380 caliber cartridge, which was secured as evidence. One fingerprint was also lifted for comparison.

Appellant occupied a four-bedroom apartment in Lubbock. At the time of the robbery appellant's two children also lived there, along with Maria Vargas, Vargas' cousin Stephanie Yzaguirre, her ten-year-old daughter, and Yzaguirre's common-law husband, Miguel Morado. Evidence of extraneous criminal conduct by all the adult occupants was admitted. Use of illegal drugs, including methamphetamine, was frequent.

Vargas worked at a Lubbock motel. During the time she was staying at appellant's apartment, she began stealing customer credit cards. When questioned by police about the thefts she ultimately confessed and then told what she knew of appellant, Morado, the Whataburger robbery, and activity at appellant's apartment. Based on this information, Lubbock police classified appellant and Morado suspects in the robbery.

2

Morado and appellant were subsequently arrested and indicted for the Whataburger robbery. Based on a guilty plea, Morado received a twenty-year sentence. At trial, he testified at length about the robbery and appellant's involvement.

According to Morado, he, and at times appellant, burglarized cars at night. They carried weapons including a nine-millimeter handgun and a rifle. Appellant also carried a black handgun.

On the night of the robbery Morado, appellant, and an unidentified male smoked methamphetamine. The trio drove Vargas' car and brought hunting masks Yzaguirre had purchased at appellant's request. Morado parked behind the Whataburger while appellant and the other man entered the restaurant. About five to ten minutes later appellant and the other man returned to the car. They drove to appellant's apartment where they divided the robbery proceeds. Morado received just over $40 in bills and change.

In its charge to the jury at the guilt/innocence phase of trial, the court instructed that Morado was an accomplice as a matter of law but refused appellant's request for an instruction concerning Yzaguirre as an accomplice as a matter of fact.

Issues

In four issues appellant contends: (1) the evidence was insufficient to corroborate the accomplice testimony of Morado; (2) the court failed to instruct the jury on Yzaguirre as an accomplice as a matter of fact; (3) the court erred in admitting extraneous evidence

3

not allowed by Tex. R. Evid. 404(b); and (4) the court erred in not excluding extraneous evidence under Rule 403.

Discussion

Issue Two: Failure to Instruct on Accomplice as a Matter of Fact

We begin with appellant's second issue. Via that issue, appellant argues the trial court erred by refusing his requested instruction concerning whether Yzaguirre was an accomplice as a matter of fact.

> An accomplice is someone who participates with the defendant before, during, or after the commission of a crime and acts with the required culpable mental state. To be considered an accomplice witness, the witness's participation with the defendant must have involved some affirmative act that promotes the commission of the offense with which the defendant is charged. A witness is not an accomplice witness merely because he or she knew of the offense and did not disclose it, or even if he or she concealed it. In addition, the witness's mere presence at the scene of the crime does not render that witness an accomplice witness. And complicity with an accused in the commission of another offense apart from the charged offense does not make that witness's testimony that of an accomplice witness.

*Druery v. State,* 225 S.W.3d 491, 498 (Tex.Crim.App. 2007) (footnotes and citations omitted). A witness is an accomplice if she could be prosecuted for the same offense as the defendant or a lesser included offense. *Blake v. State,* 971 S.W.2d 451, 454-55 (Tex.Crim.App. 1998). This means a witness is an accomplice if the evidence so connects her to the crime that she is a "blameworthy participant." *Id.* "Whether the person is actually charged and prosecuted for their participation is irrelevant to the determination of

4

accomplice status - - what matters is the evidence in the record." *Id.* at 455. The testimony of an accomplice is considered untrustworthy and should be "received and viewed and acted on with caution." *Walker v. State,* 615 S.W.2d 728, 731 (Tex.Crim.App. 1981). Thus, "before a conviction may rest upon an accomplice witness's testimony, that testimony must be corroborated by independent evidence tending to connect the accused with the crime." *Druery,* 225 S.W.3d at 498; *see* Tex. Code of Crim. Proc. Ann. art. 38.14 (Vernon 2005).[1]

Once an accomplice testifies, it is for the jury to determine if the testimony was sufficiently corroborated. *Blake,* 971 S.W.2d at 455. If the evidence establishes as a matter of law the witness is an accomplice, the court must instruct the jury accordingly. *Gamez v. State,* 737 S.W.2d 315, 322 (Tex.Crim.App. 1987). But if the parties present conflicting or unclear evidence as to whether a witness is an accomplice, the jury must initially determine, on instruction, whether the witness is an accomplice as a matter of fact. *Cocke v. State,* 201 S.W.3d 744, 748 (Tex.Crim.App. 2006); *Blake,* 971 S.W.2d at 455.

Appellant requested an instruction that Yzaguirre was an accomplice witness as a matter of fact and objected at the trial court's refusal to include the instruction in its charge

---

[1] The full text of the accomplice witness rule provides:

A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense.

Tex. Code Crim. Proc. art. 38.14 (Vernon 2005).

5

to the jury.  "It is well settled that an accused has a right to an instruction on any defensive issue raised by the evidence, whether that evidence is weak or strong, unimpeached or contradicted, and regardless of what the trial court may or may not think about the credibility of the evidence."  *Granger v. State,* 3 S.W.3d 36, 38 (Tex.Crim.App. 1999).  When the evidence raises a question of fact concerning whether or not the witness is an accomplice, the trial court should instruct the jurors to resolve the fact issue.  *Kunkle v. State,* 771 S.W.2d 435, 439 (Tex.Crim.App.1986).

Appellant was indicted for the offense of aggravated robbery.  A person commits robbery if, in the course of committing theft and with intent to obtain or maintain control of the property, the person (1) intentionally, knowingly, or recklessly causes bodily injury to another or (2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death.  *See* Tex. Penal Code Ann. § 29.02(a) (Vernon 2003).  The offense becomes aggravated if the person uses or exhibits a deadly weapon.  *See id.* § 29.03(a)(2) (Vernon 2003).  "A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both."  Tex. Penal Code Ann. § 7.01(a) (Vernon 2003).  A person is criminally responsible for the offense committed by another if, acting with intent to promote or assist the commission of the offense, the person solicits, encourages, directs, aids, or attempts to aid the other person's commission of the offense.  *See* Tex. Penal Code Ann. § 7.02(a)(2) (Vernon 2003).

To resolve the question whether Yzaguirre could have been charged as a party, we look to the evidence. No one denies that by purchasing masks for appellant at his request Yzaguirre aided or attempted to aid the commission of the robbery. The question is whether she possessed the requisite intent to be charged as a party, that is, whether she acted with the intent to promote or assist the commission of the offense. Intent is a question of fact that the jury determines from all the circumstances. *See Smith v. State,* 965 S.W.2d 509, 518 (Tex.Crim.App. 1998).

The evidence of intent was conflicting. Yzaguirre testified appellant told her that he and his uncle planned to go hunting, and she disclaimed knowledge that appellant intended to use the masks for any other purpose. Morado also denied his wife had prior knowledge of the robbery and the purpose of the masks. On the other hand, evidence abounded of criminal activity by the inhabitants of appellant's apartment. The prosecutor informed the court before trial began that she believed the Whataburger robbery was committed to obtain drug money for the inhabitants of the apartment. Despite the common use of illegal drugs by those living at the apartment, only Vargas was gainfully employed. Vargas testified she gave stolen credit cards to Yzaguirre and Morado. The credit cards were used to purchase gas for cars belonging to Morado, Vargas, and appellant. According to Morado, the cards also were used at gas stations to purchase fuel which was sold to third parties at half-price for cash. After moving into appellant's apartment, Morado began stealing to repay appellant for living accommodations. The State introduced

7

numerous photographs taken by police in the apartment, showing drugs, drug paraphernalia and stolen property.[2]

Yzaguirre bought the masks four days before the robbery. She testified appellant gave her money, asking her to purchase two hunting masks. Appellant allowed Yzaguirre use of his car for the errand. To fulfill appellant's request, Yzaguirre went to several retail stores before locating and purchasing the ski-style camouflage masks at a Wal-Mart. Yzaguirre placed such a priority on fulfilling appellant's request that she forsook attending a relative's birthday party.

Yzaguirre testified appellant and Morado usually carried guns when they left the apartment. One night after Yzaguirre purchased the masks, appellant and Morado left the apartment armed with black guns. They took with them a folding chair bag but it did not contain a chair. Yzaguirre "figured" appellant put the masks she purchased for him in the folding chair bag.

The jury might have believed Yzaguirre innocently accomplished no more than an errand for a friend who allowed her, her daughter, and Morado to live rent-free at his residence. But it might, conversely, have doubted her story that the ski-style camouflage masks she bought in September were intended for hunting, and believed Yzaguirre intentionally assisted Morado and appellant obtain money by robbery to support the

---

[2] Although the State argues in response to appellant's third and fourth issues that the evidence of drug use by the apartment's inhabitants and extraneous car burglaries committed by Morado and appellant was properly admitted at trial to prove appellant's identity as the robber, it contends there was no evidence to show Yzaguirre acted with a culpable intent when she bought the camouflage masks.

8

occupants of appellant's apartment. In its charge, the court instructed the jury on the law of parties but declined over objection to instruct on the issue of Yzaguirre as an accomplice as a matter of fact. By omitting accomplice as a matter of fact instructions as to Yzaguirre, the trial court erred.

We must now consider whether the error was harmless. A court's failure to submit an accomplice as a matter of fact instruction may amount to harmless error if some non-accomplice evidence exists tending to connect the accused to the offense. *Herron v. State,* 86 S.W.3d 621, 632 (Tex.Crim.App. 2002). Under such circumstances the omission of the instruction is harmless because its purpose has been fulfilled. *Id.* "[A] harmless error analysis for the omission of an accomplice witness instruction should be flexible, taking into account the existence and strength of any non-accomplice evidence and the applicable standard of review." *Id.* Because appellant properly preserved his claim of error by timely calling to the trial court's attention the omission of an accomplice in fact instruction pertaining to Yzaguirre, we review the error to determine if "some" harm resulted from the omission. *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App. 1984) (op. on reh'g). Cases involving preserved charge error are to be affirmed only if *no* harm has occurred. *Arline v. State*, 721 S.W.2d 348, 351 (Tex.Crim.App. 1986) (emphasis in original).

The sufficiency of corroborating evidence is tested by eliminating the accomplice witness testimony and then examining the remaining evidence to determine the existence or not of evidence connecting the defendant with the commission of the offense. *Munoz*

*v. State,* 853 S.W.2d 558, 559 (Tex.Crim.App. 1993). It is not necessary that the remaining evidence directly link the defendant to the crime or prove all the elements of the charged offense. *Gill v. State,* 873 S.W.2d 45, 48 (Tex.Crim.App. 1994). There is no precise rule as to the amount of evidence that is required, and each case is to be considered on its own facts and circumstances. *Id.; Munoz,* 853 S.W.2d at 559. In reviewing the strength of the corroborating evidence, we "examine (1) its reliability or believability and (2) the strength of its tendency to connect the defendant to the crime." *Herron,* 86 S.W.3d at 632. The testimony of one accomplice may not corroborate the testimony of another accomplice. *See Chapman v. State,* 470 S.W.2d 656, 660 (Tex.Crim.App. 1971).

Among the corroborating evidence was the testimony of the Whataburger employee on duty at the time of the robbery, who described the masks worn by the robbers as "like a mask from Wal-Mart," with large eye openings. He observed one robber attempted to empty the contents of a cash register drawer into the "duffle bag looking thing." The taller robber dropped his handgun. The employee assumed the weapon ejected a shell which was the unspent .380 caliber shell later found on the restaurant floor.

According to the Whataburger manager, the eye openings of the masks resembled "an eight lying down." He was within three feet of a robber and observed his eyes, eyebrows and upper cheekbones. The manager described this suspect as Hispanic, about 5' 7'' weighing 150-160 pounds, with dark eyes, dark eyebrows and light skin. He was armed with what the manager believed was a black nine-millimeter. The manager agreed

the robber and appellant had "similar" features.  But the manager could not identify appellant as the robber.

According to Vargas, at times appellant and Morado borrowed her car after midnight and remained away from the apartment for hours.  After these outings, Vargas found the interior decorations of her car stowed in the glove compartment.  On one occasion, Vargas found a box of latex gloves in her car.

Vargas lived in appellant's apartment about two months, from the end of July into September. During this time she observed appellant carrying two different handguns.  One was silver and the other black.  On "some" occasions when appellant left at night in her car he was armed with one of the handguns.

After the robbery, Vargas overheard an undisclosed conversation involving Yzaguirre.  Responding to a question from Vargas, Yzaguirre threw a newspaper at her containing a report of the robbery.  Morado was able to loan Vargas change for buying beer.  According to Vargas, she then "put two and two together."

Some three weeks after the robbery, a Lubbock police detective went to appellant's apartment.  She was told appellant had been evicted, but heard loud music coming from within and gained admission from the manager.  Inside were appellant and others whom she arrested for criminal trespass.

When the detective conducted a sweep search of appellant's apartment she encountered Christina Ortiz, also an occupant of appellant's apartment, lying on the bed

in appellant's bedroom. Under a blanket on the bed, the detective found a .40 caliber Beretta handgun. Initially the weapon was erroneously identified as a nine-millimeter. Other weapons were found in the apartment but the collection did not include a nine-millimeter or a .380 caliber handgun. In the livingroom of the apartment, located in a goblet, the detective found a .380 caliber shell. It and the .380 caliber shell found at the robbery scene were submitted to the Department of Public Safety crime laboratory for analysis.

About a week after the initial search, the detective received word that the management of the apartment complex where appellant lived was removing the contents of his apartment. On arrival at the apartment, the detective observed appellant placing items in his car. She arrested appellant on an outstanding misdemeanor warrant. In a bag placed in appellant's vehicle by Christina Ortiz, the detective found a .45 caliber handgun. To empty the contents of appellant's apartment, maintenance workers for the landlord entered and placed items of personal property in plastic trash bags. The bags were then set on the lawn of the apartment complex. Following an inquiry of the detective, the assistant apartment manager found camouflage masks in one of the trash bags. The masks were admitted into evidence at trial and on recall the Whataburger manager agreed that they appeared to be the same masks worn by the robbers. The detective testified that she was informed the masks were stored in a "camp chair bag." At the time of appellant's eviction, she found a bag fitting this description, but was unable to say whether it was located in appellant's bedroom or on the apartment complex lawn.

The State's crime laboratory analyst testified that a Beretta nine-millimeter pistol and .40 caliber pistol appear virtually identical. He compared the .380 caliber shell found at the robbery scene with the .380 caliber shell the detective found in appellant's apartment. The bullets shared a common manufacturer, Remington, but the DPS analyst agreed on cross-examination that probably "tens of thousands" of .380 caliber shells were available for resale in Lubbock.

A Lubbock police officer made comparisons of the fingerprint found at the robbery scene with exemplars of appellant and Morado. The print matched neither. The officer was unable to obtain a print from two handguns found at appellant's apartment.

The State's final piece of evidence was an excerpt from a recorded jail telephone conversation between appellant and Christina Ortiz. In closing argument, the State highlighted an excerpt that it and appellant interpret, "I'm not going to do 99 years because some f------ m—----------- can't hold onto his s---." According to the State, this was an inculpatory statement in response to Morado's confession. And the vernacular paralleled that used by one of the robbers.

Evaluating this body of non-accomplice evidence under the standard prescribed in *Herron*, 865 S.W.3d at 632, we find it does not tend to connect appellant to the robbery. Apart from the testimony of Yzaguirre and Morado, the pillars of the State's proof are the masks and the identification testimony of the Whataburger manager. He observed a similarity of facial features between appellant and the shorter robber. But he was unable to identify appellant as a robber. This leaves the masks.

13

In *Munoz,* 853 S.W.2d 558, the only non-accomplice testimony connecting the accused to the murder of a convenience store clerk was the wrapper of a "Bic" lighter found in the accused's vehicle. The store where the clerk was killed stocked Bic lighters but the manager could not identify the wrapper in evidence as coming from the store. *Id.* at 561-52. This was held insufficient corroborative evidence. *Id.* at 564. Here, without Yzaguirre's testimony, the masks are tied to appellant only by their location at the apartment Morado, the confessed robber, also occupied. But nothing shows the trash bag containing the masks held only appellant's property. Like in *Munoz*, we find that insufficient corroboration.

Finding the evidence did not fulfill the purpose of the missing accomplice in fact instruction as to Yzaguirre, we cannot say its absence was harmless. Appellant suffered some harm from its omission. *Herron,* 86 S.W.3d at 632. We sustain appellant's second issue.

Finding appellant's second issue dispositive of the appeal, we do not address his remaining issues. Tex. R. App. P. 47.1. We reverse the trial court's judgment and remand the case for a new trial.

James T. Campbell
Justice

Publish.