ACCEPTED
06-16-00072-CR
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
10/10/2016 12:00:00 AM
DEBBIE AUTREY
CLERK

06-16-00072-CR

In The

COURT OF APPEALS
SIXTH DISTRICT OF TEXAS
AT TEXARKANA

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS
10/10/2016 9:41:00 AM
DEBBIE AUTREY
Clerk

---

TIMOTHY JAMES MAYS, Appellant

VS.

THE STATE OF TEXAS, Appellee

On Appeal from County Court at Law #1
of Hunt County, Texas
Trial Court Cause CR1500926
Honorable Timothy J. Linden, Judge Presiding

---

**APPELLANT'S BRIEF**

---

TO THE HONORABLE JUSTICES OF THE COURT OF APPEALS:

Comes now the Appellant and submits this brief pursuant to the provisions

of the Texas Rules of Appellate Procedure in support of his request for the

judgment of conviction to be overturned in Cause No. CR1500926.

Oral Arguments Requested

1

# I. IDENTITY OF PARTIES AND COUNSEL

**Appellant's Attorney**:
Jessica Edwards
P.O. Box 9318
Greenville, TX 75404

**Appellant's Attorney at Trial:**
Shaun Council
The Council Law Firm, PLLC.,
2615 Lee Street,
Greenville, Texas 75403

**Appellee:**
The State of Texas by and through
Matthew Brett Morris
Assistant Hunt County Attorney
4th Floor Hunt County Courthouse
2507 Lee Street
Greenville, TX 75401

## II.  TABLE OF CONTENTS

I.   IDENTITY OF PARTIES AND COUNSEL ..........................................................2

II.  TABLE OF CONTENTS ..........................................................................................3

III.   INDEX OF AUTHORITIES .................................................................................5

  A.  Case Law ............................................................................................................5

  B.  Statutes................................................................................................................6

IV.   STATEMENT OF THE CASE ............................................................................7

V.  ISSUES PRESENTED .............................................................................................7

  A.  Point of Error Number 1 ....................................................................................7

  The trial court erred in denying Appellant's request to include an accomplice-
witness instruction in the jury charge after defense counsel properly objected..7

  B.  Point of Error Number 2....................................................................................7

  Withstanding the first point of error, the evidence is legally insufficient to find
Appellant guilty of assault causing bodily injury, as the only evidence against
Appellant was uncorroborated accomplice witness testimony merely showing
the crime had been committed...............................................................................7

VI.   STATEMENT OF FACTS...................................................................................7

VII.   POINT OF ERROR NUMBER ONE ..............................................................13

  A.  Issue Presented .................................................................................................14

  B.  The Law.............................................................................................................14

  C.  Argument ..........................................................................................................18

  D.  Harm Analysis ..................................................................................................25

VIII.  POINT OF ERROR NUMBER TWO................................................................27

  A.  The Law.............................................................................................................27

  B.  Argument ..........................................................................................................28

IX.   PRAYER FOR RELIEF.....................................................................................30

X.  CERTIFICATE OF SERVICE.................................................................31

XI.  CERTIFICATE OF SERVICE................................................................31

XII.  CERTIFICATE OF COMPLIANCE .........................................................31

## III. **INDEX OF AUTHORITIES**

**A.   Case Law**

*Arline v. State*, 721 S.W.2d 348, 351 (Tex. Crim. App. 1986) ......................... 25,26

*Biera v. State*, 280 S.W.3d 388, 394 (Tex. App.—Amarillo 2008, pet. ref'd) ........26

*Blake v. State*, 971 S.W.2d 451, 455 (Tex. Crim. App. 1998) ...................... 14,15,16

*Brooks v. State*, 323 S.W.3d 893, 894–913 (Tex.Crim.App.2010). ............. 14,15,27

*Cathey v. State*, 992 S.W.2d 460, 462 (Tex.Crim.App.1999) ................................17

*Clayton v. State*, 235 S.W.3d 772, 778 (Tex.Crim.App.2007).................................28

*Cocke v. State*, 201 S.W.3d 744, 747 (Tex. Crim. App. 2006) .......................... 16,18

*Herron v. State*, 86 S.W.3d 621, 632 (Tex. Crim. App. 2002)................................25

*Jackson v. Virginia*, 443 U.S. 307, 318–20, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d
 560 (1979). ......................................................................................................27

*Laster v. State*, 275 S.W.3d 512, 517(Tex.Crim.App.2009) ..................................27

*Maynard v. State*, 166 S.W.3d 403, 410 (Tex.App.-Austin 2005, pet. ref'd...........16

*McFarland v. State*, 928 S.W.2d at 514.................................................................15

*Medina v. State*, 7 S.W.3d 633, 641 (Tex. Crim. App. 1999) .......................... 14,18

*Riggs v. State*, 744 S.W.2d 140, 141 (Tex. App. 1986).................................... 15,17

*Singletary v. State*, 509 S.W.2d 572, 575 (Tex. Crim. App. 1974) .........................14

*Smith v. State*, 332 S.W.3d 425, 439 (Tex. Crim. App. 2011) ................................17

*Solomon v. State*, 49 S.W.3d 356, 361 (Tex.Crim.App.2001) ................................16

*Tibbs v. Florida*, 457 U.S. 31, 41, 102 S.Ct. 2211, 2218, 72 L.Ed.2d 652 (1982); 28

*Walker v. State*, 615 S.W.2d 728, 731 (Tex.Crim.App.1981).................................16

*Williams v. State*, 235 S.W.3d 742, 750 (Tex.Crim.App.2007................................28

*Wincott v. State*, 59 S.W.3d 691, 698 (Tex.App.-Austin 2001, pet. ref'd)..............16

**B.    Statutes**

Tex. Code Crim. Proc. §36.19, V.A.C.C.P. (1974) ..................................................25

Tex. Pen. Code Ann. §7.01(a) (Vernon 1974).........................................................15

## IV. STATEMENT OF THE CASE

This is an appeal of judgment and sentence in a criminal case from the County Court at Law #1, Hunt County, Texas. Appellant was convicted of Assault Causing Bodily Injury on March 29, 2016 after a jury trial. On that same date, the jury assessed Appellant's punishment at 2 years community supervision and a $2,000 fine. Appellant appeals this conviction.

## V. ISSUES PRESENTED

### A. Point of Error Number 1

The trial court erred in denying Appellant's request to include an accomplice-witness instruction in the jury charge after defense counsel properly objected.

### B. Point of Error Number 2

Withstanding the first point of error, the evidence is legally insufficient to find Appellant guilty of assault causing bodily injury, as the only evidence against Appellant was uncorroborated accomplice witness testimony merely showing the crime had been committed.

## VI. STATEMENT OF FACTS

Appellant was charged by information with the offense of assault causing bodily injury on September 8th, 2015.[1] The information alleged that on or about the 3rd day of August, 2015, A.D., in Hunt County, Texas, Appellant did then and

---

[1] (C.R. 1, p. 6).

there intentionally, knowingly, or recklessly cause bodily injury to Hank Allison by striking the body of the victim with BB pellets shot from a BB gun.[2]

At trial, the State first called alleged victim, Hank Allison ("Allison").[3] Allison testified that on the afternoon of August 30th, 2015, he was mowing his lawn via riding lawnmower at a trailer park in Commerce, Texas.[4] While mowing, Allison witnessed Appellant and other individuals congregating near Appellant's truck in a nearby lot.[5] Allison testified the group of individuals was composed of Appellant, four young men, and one woman.[6] The named individuals involved were later identified as Appellant Timothy James Mays, Appellant's girlfriend Chastin Michelle White, Dwayne Cash, Dwayne's sixteen-year old son Kiland Cash, and Jordan Patrick.

After observing the group Allison continued to mow, but Allison testified he then felt a "sharp pain in [his] back" that sent a shock wave through his body.[7] Allison testified he "instantly knew what happened" and that he knew he had been shot.[8] Allison testified he knew this because he "had seen Tim with that pump-up BB pellet gun many times at night and during the day shooting it around there."[9]

---

[2] (R.R. 3. P. 11).
[3] (R.R. 3, p. 19).
[4] (R.R. 3, p. 19-20).
[5] (R.R. 3, p. 21).
[6] (R.R. 3, p. 24).
[7] (R.R. 3, p. 22).
[8] (R.R. 3, p. 24).
[9] *Id.*

After stopping the mower, Allison then walked over to the group of individuals congregating near Appellant's truck.[10] Allison approached the group to "find out who done it and ask for an apology."[11] Allison testified the group laughed at him and that Appellant told Allison that something must have flown up from the mower and struck him in the back.[12] Allison, having not received an apology, re-mounted his mower and finished mowing; he then went inside, got his phone and called 911.[13] Allison testified that the four individuals with Appellant were already departing the scene when Allison informed them he had phoned the police, the individuals then started walking faster.[14] Allison testified that when the police arrived, only Appellant's girlfriend and himself were present near the scene.[15]

Allison testified he did not see Appellant or anyone else shoot him because Allison's back was turned.[16] Allison testified he observed Appellant and four other people "minutes before" something hit him in the back.[17] Allison was not familiar with any of the individuals in the group, aside from Appellant due to previous interactions.[18] Allison had never had any conflict with Appellant prior to that day.[19]

---

[10] (R.R. 3, p. 24).
[11] (R.R. 3, p. 25).
[12] *Id.*
[13] (R.R. 3, p. 26).
[14] *Id.*
[15] (R.R. 3, p. 27).
[16] (R.R. 3, p. 31).
[17] (R.R. 3, p. 32).
[18] (R.R. 3, p. 44).
[19] (R.R. 3, p. 45).

Allison testified all of the individuals he approached after dismounting his mower were laughing and "carrying on about something."[20] Allison believed all of the individuals in the group seemed to "know what was going on."[21]

After Allison testified, the State called Kiland Cash ("Cash").[22] Cash testified he was not a personal friend of Appellant, noting he only knew Appellant as a friend of his father's.[23] Cash also testified it was the first time he met Jordan Patrick.[24] Cash testified he and the others were present on the day in question to fix the broken axle of a mobile home.[25] Cash testified that upon arriving to where Appellant and the others were, he noticed a BB gun lying in the back of what he assumed was Appellant's truck.[26]

Cash then testified that Appellant said "Watch this," immediately before shooting a BB gun in the direction of Allison.[27] Cash said he did not see a shot but saw "the old guy" on the mower react to a shot.[28] Cash testified that the only thing he remembered after the alleged shot was Allison yelling that he was calling the police.[29] Cash denied laughing when approached by Allison and testified that he

---

[20] (R.R. 3, p. 34).
[21] (R.R. 3, p. 39).
[22] (R.R. 3, p. 49).
[23] *Id.*
[24] (R.R. 3, p. 55).
[25] (R.R. 3, p. 48-49).
[26] (R.R. 3, p. 49).
[27] (R.R. 3, p. 52-53).
[28] (R.R. 3, p. 53).
[29] (R.R. 3, p. 56).

decided to leave because of his status as a varsity high-school athlete.[30] Cash could not remember if Appellant left the scene before or after he departed.[31] Cash then admitted to leaving the scene after learning Allison called the police; he also testified to later being picked up by police while walking away from the scene alongside Jordan Patrick.[32]

The State then called Jordan Patrick ("Patrick").[33] Patrick arrived to testify the day of trial restrained by handcuffs and shackles.[34] The Court gave Appellant's trial counsel limiting instruction as to the scope of Patrick's criminal history before proceeding.[35] Patrick testified that he did not know Appellant personally but that he saw Appellant shoot Allison with a BB gun.[36] Patrick testified that he was in the presence of Appellant and the others when Appellant grabbed a BB gun and shot it, but he denied laughing when approached by Allison.[37] Patrick further testified Appellant "ran" after Allison informed those present that he was calling the police.[38] After leaving, Patrick testified he was apprehended by police while walking with Cash approximately a quarter-mile away from where the incident

---

[30] (R.R. 3, p. 60-63).
[31] (R.R. 3, p. 57-58).
[32] (R.R. 3, p. 55).
[33] (R.R. 3, p. 77).
[34] (R.R. 3, p. 76).
[35] (R.R. 3, p. 73).
[36] (R.R. 3, p. 79-84).
[37] (R.R. 3, p. 84).
[38] (R.R. 3, p. 85).

occurred.[39] Importantly, Patrick testified that he could not remember how many days during the month of August that he was using drugs.[40] Patrick testified that he was likely under the influence of narcotics on the day in question.[41] Patrick testified he was on felony probation for failing a urinary analysis but accurately remembered the events that occurred that day.[42]

Next, the State called Officer Samantha Manrique ("Manrique"), the Officer who first arrived on location, dispatched because of Allison's call.[43] Manrique testified she first made contact with Allison who told her the males had fled the scene but that Appellant's girlfriend was still present.[44] Manrique then identified the woman present on the scene as Chastin Michelle White ("White") due to previous interactions.[45] Manrique testified she made contact with White but did not believe her to be the alleged shooter.[46] Manrique then testified she was unable to locate a weapon in the thick brush or from the search of Appellant's vehicle.[47] Manrique testified that based on what she had gathered from witnesses, specifically "…the victim, two witnesses who witnessed it as well that are

---

[39] (R.R. 3, p. 96-97).
[40] (R.R. 3, p. 90).
[41] *Id.*
[42] (R.R. 3, p. 86-91).
[43] (R.R. 3, p. 98).
[44] (R.R. 3, p. 103).
[45] *Id.*
[46] (R.R. 3, p. 103-04).
[47] (R.R. 3, p. 105-06).

independent" that there was enough information to charge Appellant with a crime.[48]

After the State rested, Appellant's counsel moved the court to make a finding that Cash and Patrick were party to the action and requested a directed verdict based on inability to corroborate the facts of the case outside their own testimony.[49] Appellant's trial counsel then moved for a directed verdict based on insufficiency of the evidence, specifically, an inability to "connect the dots between this alleged shooting and the actual injury being a result of that shooting."[50] Further, Appellant's trial counsel objected to the charge, specifically to "any charge that does not include an instruction as to the law of parties…" which the court denied.[51] Next, Appellant's trail defense counsel submitted a proposed charge having removed the word "or" from in-between "BB" and "pellets" to read "… by striking the body of the victim with BB pellets…" in order to separate the two objects as they are mutually exclusive.[52] After the closing arguments, the jury returned a guilty verdict upon which this appeal is based.

## VII.  POINT OF ERROR NUMBER ONE

---

[48] (R.R. 3, p. 106-10).
[49] (R.R. 3, p. 130-31).
[50] (R.R. 3, p. 131).
[51] (R.R. 3, p. 137-38, 141).
[52] (R.R. 3, p. 134).

13

The trial court erred in denying Appellant his right to the inclusion of an accomplice-witness instruction in the jury charge after defense counsel properly objected.

## A.   Issue Presented

Whether a jury must be instructed to determine if the State's witnesses are accomplices under art. 38.14, Texas Code of Criminal Procedure, when the witnesses were found having fled the scene, having delivered inconsistent testimony, and when Appellant's trial counsel properly objected.

## B.   The Law

In *Singletary*, the court explained that if there is a conflict in the evidence regarding an accomplice witness, the court should charge the jury on the question of whether the witness was an accomplice as a matter of fact. But if there is not enough evidence to support a charge against the witness either as a principal, an accomplice, or an accessory, then he is not an accomplice witness.[53] If the evidence is conflicting, it is proper to leave the question of whether an inculpatory witness is an accomplice witness as a matter of fact to the jury under instructions defining the term accomplice.[54]

An accomplice witness is one who can be prosecuted for the offense with which the accused is charged or for a lessor-included offense.[55] Mere presence at

---

[53] *Singletary v. State*, 509 S.W.2d 572, 575 (Tex. Crim. App. 1974)

[54] *Blake v. State*, 971 S.W.2d 451, 455 (Tex. Crim. App. 1998)

[55] *Brooks v. State*, 686 S.W.2d 952, 957 (Tex.Crim.App.1985) (en banc); *Medina v. State*, 7 S.W.3d 633, 641 (Tex.Crim.App.1999).

the scene of the commission of a crime does not compel the conclusion that a witness is an accomplice witness.[56] In determining whether a witness is an accomplice the evidence must be viewed in the same manner that evidence would be viewed in determining whether a person should be found a party to a crime.[57] As the court in *Gonzales* explained, "to constitute one an accessory in this state his participation in the crime and acts must all have occurred subsequent to the commission of the offense. And to constitute one an accomplice, his acts must have occurred prior to the commission, and he at the time doing nothing in the furtherance of the common purpose and design."[58]

The court must look to the events before, during, and after the commission of a crime to determine the involvement of the accomplice witness.[59] A person is an accomplice if there is sufficient evidence connecting him to the criminal offense as a blameworthy participant.[60] The participation necessary to be considered an accomplice must involve an affirmative act or omission by the witness to promote the commission of the offense.[61]

---

[56] *Brooks* at 957.
[57] Tex. Penal Code Ann. sec. 7.01(a) (Vernon 1974).
[58] *Id.* at 576.
[59] *Brooks v. State*, 686 S.W.2d at 957. *Riggs v. State*, 744 S.W.2d 140, 141 (Tex. App. 1986).
[60] *Blake v. State*, 971 S.W.2d 451, 455 (Tex.Crim.App.1998).
[61] *Id.* at 454; *McFarland v. State*, 928 S.W.2d at 514.

A State's witness may be an accomplice as a matter of law or as a matter of fact.[62] Whether the witness is actually charged with a crime for participation in the offense is irrelevant; what is relevant is what is shown by the evidence.[63] Under article 38.14 of the Texas Code of Criminal Procedure "[a] conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense."

The testimony of an accomplice witness is inherently untrustworthy and should be received and acted on with caution because it is "evidence from a corrupt source."[64] This accomplice-witness rule creates a statutorily imposed review and is not derived from federal or state constitutional principles that define the factual and legal sufficiency standards.[65] Thus, to weigh the sufficiency of the corroborative evidence, a court must disregard the accomplice's testimony and examine the remaining portions of the record to ascertain whether there is evidence tending to connect the accused with the commission of the crime.[66]

---

[62] *Cocke v. State*, 201 S.W.3d 744, 747 (Tex.Crim.App. 2006).

[63] *Blake v State* at 455.

[64] *Walker v. State*, 615 S.W.2d 728, 731 (Tex.Crim.App.1981); *Wincott v. State*, 59 S.W.3d 691, 698 (Tex.App.-Austin 2001, pet. ref'd).

[65] *Druery* at 498.

[66] *Solomon v. State*, 49 S.W.3d 356, 361 (Tex.Crim.App.2001); *Maynard v. State*, 166 S.W.3d 403, 410 (Tex.App.-Austin 2005, pet. ref'd).

If the combined weight of the non-accomplice evidence tends to connect the defendant to the offense, then the requirement of article 38.14 has been fulfilled.[67] However, evidence that merely proves that the offense was committed does not suffice.[68]

For example, in *Riggs* the court found the testimony of an accomplice witness to be unreliable because of the witness's tacit involvement in crimes leading up to the murder. The court agreed with Appellant that the trial court erred as a matter of law in failing to submit to the jury the witnesses' role as an accomplice. The court stated "Where there is doubt whether a witness is an accomplice, submitting the issue to the jury is sufficient even though the evidence seems to preponderate in favor of the conclusion that the witness is an accomplice as a matter of law."[69]

The Legislature has held that the fact finder in any criminal case should exercise caution when considering the testimony of an accomplice.[70] Accomplice testimony is particularly suspect as "accomplices often have incentives to lie, such as to avoid punishment or shift blame to another person."[71] The defendant is entitled to an accomplice-witness instruction if and only if "there is sufficient

---

[67] *Cathey v. State*, 992 S.W.2d 460, 462 (Tex.Crim.App.1999).
[68] *Id.*
[69] *Riggs v. State*, 744 S.W.2d 140, 142 (Tex. App.—Houston [1st Dist.] 1986, no pet.)
[70] *Smith v. State*, 332 S.W.3d 425, 439 (Tex. Crim. App. 2011)
[71] *Id.*

evidence in the record to support a charge against the witness alleged to be an accomplice."[72]

But, as the court stated in *Cocke*, "it is well settled that a defendant has a right to an instruction on any defensive issue raised by the evidence, whether that evidence is weak or strong, unimpeached or contradicted, and regardless of what the trial court may think about the credibility of the evidence." This rule is designed to ensure that the jury, not the judge, decides the credibility of the evidence.[73]

## C.    Argument

The trial court erred in denying Appellant his right to the inclusion of an accomplice-witness instruction in the jury charge because there is sufficient evidence present in the record to support the Appellant's theory that Kiland Cash and Jordan Patrick, two witnesses who testified on behalf of the State, were accomplice–witnesses. Their testimony was uncorroborated outside of each other's accounts and they were circumstantially connected and complicit to the commission of the crime as either accomplices or accessories.

A review of the facts brings to light the inaccuracies apparent in Cash's and Patrick's accounts of the events and their inherent untrustworthiness. More

---

[72] *Id.* at 455 (internal quotation marks omitted); *Medina v. State*, 7 S.W.3d 633, 641 (Tex. Crim. App. 1999)

[73] *Cocke v. State,* 201 S.W.3d 744, 747 (Tex. Crim. App. 2006)

18

importantly, the court's act of unilaterally deciding that Cash and Patrick were not accomplice–witnesses usurped the role of the jury and deprived Appellant of an impartial trial. The failure of the court to include accomplice-witness instruction in the charge ultimately led to the erroneous conviction of Appellant. Without the uncorroborated testimony from Cash or Patrick, the State would otherwise have been unable to support a conviction, which violated article 38.14 of the Texas Code of Criminal Procedure because the State would only be able to show the possible commission of a crime.

Beginning by order of appearance and looking at the involvement of Kiland Cash before, during, and after the commission of the alleged crime, it can be determined that Cash's testimony is both untrustworthy and inconsistent and thus required the court to submit as an issue to be resolved as a matter of fact by the jury upon instruction.

Cash testified that on the day in question he had never before met or spoken to Jordan Patrick. This is inconsistent when viewed by his actions, namely being found walking with Patrick shortly before being apprehended by police, having already fled the scene of the incident. Cash met Patrick the day of the incident and both were by all accounts accessories because of their failure to disclose to Officer Manrique the location of the BB gun, which is an affirmative act.

Additionally, the period in-between when the alleged shooting took place and when Cash and Patrick were apprehended gave both subjects many opportunities to fabricate and corroborate each other's fictitious accounts of what transpired. Doubt was cast and is present in the record as to the witnesses' statuses as a matter of fact. Such doubt was expressed as Appellant's trial defense counsel timely and properly objected to preserve the error. Appellant's defense counsel illustrated the need for witness-accomplice instruction in order to put the jury on notice that the reliability of testimony from Cash and Patrick was untrustworthy. Here, when Appellant's trial defense counsel properly objected, the court should have found conflict enough to include charge to the jury as an issue of fact in order to comport with decades of precedent.

There was no evidence produced at trial that would corroborate the accomplice witness testimony. No weapon was recovered, no ammunition or packaging for ammunition was recovered, there was no recordation or mention of the crime by Appellant, and the victim alone is unable to substantiate the weapon used, or if a weapon was used, or the identity of the shooter. Moreover, the uncorroborated testimony of Cash merely shows a crime may have been committed. However, as Appellant's trial defense counsel suggested, there remains nothing in the record to connect the dots.

Additionally, viewing the actions of Cash after the commission of the alleged crime and when confronted by Allison, Cash was unable to corroborate Patrick's testimony, and vice-versa. Namely, Allison's testimony regarding his confronting of the group after he had been shot is in stark contrast to Cash's and Patrick's testimony. Allison testified that the group was laughing and carrying on about something. Cash's recollection was of Allison informing the group that Allison was calling the cops. Patrick's recollection added that Allison approached the group and demanded an apology. Neither Cash nor Patrick admitted to laughing. Differing accounts of what transpired should have exposed to the trial court that certain facts were muddled and Appellant's request to include accomplice–witness instruction was substantiated from such accounts.

Additionally, looking at the actions of the Cash as the Officer viewed them, Cash could just have easily have been charged with the crime had Appellant been apprehended first. Cash was present at the scene, denied involvement when confronted by Allison, and ultimately fled upon realizing the police were on the way. These actions when applied to the standard used in *Blake* should be regarded as affirmative actions, enough so to qualify Cash as an accomplice witness, or at the least, submit the issue to the jury.

Cash's status as an accessory is consistent as his testimony reveals he observed a weapon initially in Appellant's truck, then in Appellant's hands, but he

was unable to place the weapon when confronted by Allison who saw the group laughing, or when question by Officer Manrique. Cash's testimony elicited doubt regarding his criminal involvement in the incident. Accordingly, Cash should have been viewed as an accomplice-witness, and the trial court should have allowed the issue to be submitted to the jury when Appellant's trial counsel objected.

Further, Cash essentially testified that Appellant's actions were nearly identical to his own but Cash rearranged Appellant as the alleged shooter in place of either himself, Patrick, or his father, Dwayne Cash. The irony remains that because Cash and Patrick were apprehended prior to Appellant, they were able to deliver their account to Manrique and avoid arrest.

The testimony of Patrick reveals a similar pattern of untrustworthy actions reflected in the record. However, his testimony is even less credible as Patrick admitted it was likely a recollection of what transpired when he was under the influence of illegal narcotics. Patrick's testimony, as Appellant's trial defense counsel correctly stated, was potentially motivated by self-preservation because Patrick was on probation at the time of the incident.

Also, while fleeing the scene Patrick had the opportunity and motive to corroborate with the younger, more impressionable Cash. Cash was a sixteen-year old, and by every account, a child; whereas Patrick, a known felon housed in a substance abuse program and admittedly on drugs throughout the events likely

acted with self-preservation in mind. Patrick's status as an accomplice or accessory is equal to or above Cash because of his questionable sobriety and criminal record. For these reasons, Appellant was entitled to accomplice-witness in the jury charge. These events alone give the court reason to include accomplice–witness instruction, if not an obligation. As the court stated in *Cocke*, the rule is designed to ensure that the jury, not the judge, decides the credibility of the evidence.

Ultimately, because of the error of the trial court, the jury was unable to accurately assess the credibility of the witnesses due in part to (1) the unconnected non-accomplice evidence presented, and (2) the issue as a matter of fact as to whether Patrick and Cash were accomplice witnesses. The record reflects the limited persuasive value of the unconnected non-accomplice evidence presented. Alone, this evidence would at best possibly show a crime had been committed. This submission would not comport with article 38.14 and likely result in outright dismissal prior to any trial ever being set.

The importance of the non-accomplice evidence available in the record reveals beyond question the status of Cash and Patrick as accomplice–witnesses. To illustrate this, the court could simply look at the testimony of Allison and Manrique on the assumption it was relied on by the State to corroborate Cash's and Patrick's testimony. In doing so it becomes clear the State was unable to connect the dots and corroborate much of anything, aside from Allison's injury from an

unknown object. As such, it was error for the trial court to rule out the possibility of the Appellant's defensive theory.

Allison's testimony failed to corroborate anything besides either he was hit with debris from a mower or that a crime may have been committed. Allison's testimony regarding previous sightings of Appellant using a BB gun shows nothing more than Appellant's possible ownership or use of a BB gun. Should the court allow ownership of a commonly owned instrument, possibly used in a crime, to suffice as corroborative or connective non-accomplice evidence without more detail, would open the door to flagrant prosecutorial abuse and endless uncertainty. It would potentially allow non-accomplice testimony to corroborate anything, like an alleged drunk driver's ownership of a car used as evidence to connect him to drunk driving because non-accomplice witness testimony may have seen him driving a car in the weeks prior to the event.

Allison's testimony provided nothing other than the fact that it was a BB gun he had previously seen in the weeks prior. BB guns are common instruments; ownership alone without further details or descriptions shows nothing but possible ownership and fails to meet any standard of corroboration. Ultimately, because issues of fact regarding the testimony and status of accomplice-witnesses were present in the record and properly objected to, the trial court should not have

unilaterally ruled out Appellant's defensive theory and should have submitted the issue to the jury.

## D.   Harm Analysis

The degree of harm that must be present to require reversal of a case depends upon whether the error was preserved or unpreserved.[74] Concerning error that was preserved at trial by a timely and specific objection, that error must have been "calculated to injure the rights of [the] defendant."[75] A defendant must have suffered "some" actual, rather than theoretical, harm from the error in order for a case to be overturned.[76] The Court of Criminal Appeals chose the term "some" to indicated the minimum degree of harm necessary for reversal of cases involving preserved charging error.[77] In determining the strength of a particular item of non-accomplice evidence, we examine (1) its reliability or believability and (2) the strength of its tendency to connect the defendant to the crime.[78]

Courts in Texas have held that if appellant properly preserved his claim of error by timely calling to the trial court's attention the omission of an accomplice in fact instruction, the court reviews the error to determine if "some" harm resulted

---

[74] *Arline v. State,* 721 S.W.2d 348, 351 (Tex. Crim. App. 1986)
[75] Article 36.19, V.A.C.C.P. (1974)
[76] *Id.*
[77] *Arline v. State,* 721 S.W.2d 348, 351 (Tex. Crim. App. 1986)
[78] *Herron v. State,* 86 S.W.3d 621, 632 (Tex. Crim. App. 2002)

from the omission.[79] Courts have held that cases involving preserved charge error are to be affirmed only if *no* harm has occurred.[80]

Here, the essence of the error by the trial court in failing to include accomplice–witness instruction lies in the near-absolutism that Appellant would not have been convicted but not for the uncorroborated testimony of Cash and Patrick. The record reveals Appellant's trial defense counsel timely and properly preserving error by objecting. The certainty that harm is present fits squarely into the courts definition of "some harm" in *Arline*, and very likely rising above the minimal degree of harm required for reversal. A review of the record shows that without their uncorroborated testimony the State would be left solely with the testimony of Allison and Officer Manrique. The State would undoubtedly be able to show the deficient prong of article 38.14, that the crime was committed. However, the State would falter on the principal element of 38.14, that Appellant committed the crime. This is because Allison never saw the shot, White told the Officer nothing of value, and the Officer arrived on scene only to find no weapon and no Appellant. Instead, the officer did find a felon who was likely not sober and an impressionable teenager concerned more with high-school athletics than the health and wellbeing of his fellow man. Both were given enough time while

---

[79] *Biera v. State*, 280 S.W.3d 388, 394 (Tex. App.—Amarillo 2008, pet. ref'd)
[80] *Arline v. State,* 721 S.W.2d 348, 351 (Tex.Crim.App.1986)

fleeing and the opportunity to conceal and inculpate any crime on Appellant,

diverting investigative attention away from themselves. The trial court's decision to

rule out the possibility of the existence of Appellant's theory was harmful. As a

result, Appellant was convicted on account of such refusal without the jury having

had the chance to consider the possibility the accomplices or be warned of their

degree of involvement.

## VIII.  POINT OF ERROR NUMBER TWO

The evidence is legally insufficient to find Appellant guilty of assault causing
bodily injury, as the only evidence against Appellant was uncorroborated
accomplice witness testimony.

## A.    The Law

Challenges to the sufficiency of the evidence are reviewed under the

standard enunciated in *Jackson v. Virginia*.[81] Under the Jackson standard, evidence

is insufficient to support a conviction if, considering all the record evidence in the

light most favorable to the verdict, no rational fact finder could have found that

each essential element of the charged offense was proven beyond a reasonable

doubt.[82] Evidence is insufficient under four circumstances: (1) the record contains

no evidence probative of an element of the offense; (2) the record contains a mere

---

[81] *Jackson v. Virginia*, 443 U.S. 307, 318–20, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979). *Brooks v. State*, 323 S.W.3d 893, 894–913 (Tex.Crim.App.2010).

[82] *See Jackson*, 443 U.S. at 317–19, 99 S.Ct. at 2788–89; *Laster v. State*, 275 S.W.3d 512, 517(Tex.Crim.App.2009).

"modicum" of evidence probative of an element of the offense; (3) the evidence conclusively establishes a reasonable doubt; or (4) the acts alleged do not constitute the criminal offense charged.[83] We consider both direct and circumstantial evidence and all reasonable inferences that may be drawn from that evidence in making our determination.[84]

The Jackson standard defers to the fact finder to resolve any conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from "basic facts to ultimate facts."[85] An appellate court presumes the fact finder resolved any conflicts in the evidence in favor of the verdict and defers to that resolution, provided that the resolution is rational.[86] If an appellate court finds the evidence insufficient under this standard— meaning that no rational fact finder could have found that each essential element of the charged offense was proven beyond a reasonable doubt—it must reverse the judgment and enter an order of acquittal.[87]

## B. Argument

The State failed to produce sufficient evidence to support the conviction of Appellant. On the assumption this court shares the position of Appellant on the

---

[83] *See Jackson*, 443 U.S. 66 at 314, 318, 99 S.Ct. at 2786, 2788–89 & n. 11; *Laster*, 275 S.W.3d at 518; *Williams v. State*, 235 S.W.3d 742, 750 (Tex.Crim.App.2007).

[84] *Clayton v. State*, 235 S.W.3d 772, 778 (Tex.Crim.App.2007).

[85] *Jackson*, 443 U.S. at 318–19, 99 S.Ct. at 2788–89; Clayton, 235 S.W.3d at 778.

[86] *See Jackson*, 443 U.S. at 326, 99 S.Ct. at 2793.

[87] *See Tibbs v. Florida*, 457 U.S. 31, 41, 102 S.Ct. 2211, 2218, 72 L.Ed.2d 652 (1982); *Jackson*, 443 U.S. at 317–19.

first point of error, the testimony of Cash and Patrick is to be viewed as removed. Then, a review of the record leaves the State with an insufficient amount of testimony and evidence that at best, possibly shows a mere modicum of evidence probative of an element of the offense, specifically, the identity of the person who committed the crime. While the testimony of Allison could possibly establish the commission of a crime, the State, without corroborated testimony from other witness, of which there was none, would be unable to prove all of the elements of the assault.

Further, the State would be forced to rely on the testimony of Allison, a victim who did not see the assailant's identity or actions and did not see the weapon used to commit the alleged act. While the State would likely rely upon Allison's account of having seen Appellant with a BB gun in the weeks leading up to the incident, this would only conclusively establish reasonable doubt in the record as the State would be unable to offer anything of more value relating to the culpability or identity of the alleged shooter.

Additionally, Appellant's defense counsel's removal of the word "or" from the State's proposed jury charge matching the information rendered the verdict incorrect as there is no probative evidence of "*BB pellets*" used in the commission of any crime. BBs and pellets are mutually exclusive as they are completely different types of ammunition. A review of the record possibly reflects the use of

BBs, but there is no mention and thus insufficient evidence to sustain that Allison was in fact struck by "BB pellets." At the time of this brief, there exists no such combination or anything called a "BB pellet". There are BBs and there are pellets and these two forms of ammunition are completely different from each other. Because the State omitted the disjunctive connector "or," the record cannot affirm the conviction on account of a completely non-existent object as an element in the information.

Therefore, because of flagrant error on account of the flawed jury charge and insufficient evidence in the record, the State's conviction cannot be affirmed. Accordingly, Appellant's conviction should be reversed and rendered.

## IX.  PRAYER FOR RELIEF

For the reasons stated hereinabove, it is respectfully submitted that, upon appellate review, the Court of Appeals should reverse the judgment of conviction and sentence of the Trial Court.

Respectfully submitted,


/s/ Jessica Edwards
JESSICA EDWARDS
Attorney for Appellant
Timothy James Mays

30

State Bar Number - 24000994
P.O. Box 9318
Greenville, Texas 75404
Telephone Number - (903) 458-9108
Facsimile Number - (903) 200-1359
jessica@jessicaedwardslaw.com

## X.  CERTIFICATE OF SERVICE

I certify that a true and correct copy of Appellant's Brief was served on the Hunt County Attorney's Office through the efiletexas website on October 9, 2016.


/s/ Jessica Edwards
Jessica Edwards


## XI.  CERTIFICATE OF SERVICE

I certify that a true and correct copy of Appellant's Brief was delivered to Appellant via certified mail.


/s/ Jessica Edwards
Jessica Edwards


## XII.  CERTIFICATE OF COMPLIANCE

I certify that Appellant's Brief is written in Times New Roman font in 14-point text.  Appellant's brief has 6,199 words according to the word count feature on the undersigned attorneys word processing program.


/s/ Jessica Edwards
Jessica Edwards